# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3983

_____

| | | |
|---|---|---|
| Timothy J. Dropinski, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Douglas County, Nebraska, a | * | of Nebraska. |
| Political Subdivision of the State | * | |
| of Nebraska, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 2002

Filed: August 5, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant Timothy Dropinski appeals the district court's[1] order granting Douglas County's motion for summary judgment and denying Dropinski's similar motion. For the reasons set forth below, we affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

## I.    BACKGROUND

Dropinski filed this claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) et. seq., and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 et. seq., for damages for unlawful discrimination on the basis of disability. In accordance with our standard of review, we recite the facts in the light most favorable to Dropinski.

Dropinski worked for Douglas County as an Automatic Equipment Operator (AEO II). On December 1, 1997, Dropinski slipped and fell while cleaning the windshield of his truck, injuring his back. As a result of that injury, Dropinski was off work until January 19, 1998. When Dropinski returned to work, he began to experience back pain and visited a doctor on January 28, 1998. The doctor recommended that Dropinski work no more than forty hours per week and Dropinski made this request to Douglas County. Dropinski alleges that Douglas County refused this accommodation and he returned to working twelve-hour shifts as required. Thereafter, Dropinski continually experienced back pain while performing his essential job requirements. Dropinski claims that at all times Douglas County was notified of his pain and resulting limitations and that when Dropinski sought accommodation, Douglas County refused.

On October 19, 1998, Dropinski received further treatment for his back injury and the doctor recommended that Dropinski be restricted from frequent bending, twisting, squatting, and lifting more than forty pounds while working. Dropinski again relayed these restrictions to Douglas County seeking accommodation. Douglas County responded by placing Dropinski on leave beginning October 21, 1998, until he reached full recovery and was able to work without restriction. Dropinski remained on leave until January 27, 2000, at which time he was terminated from employment with Douglas County.

The district court held that there was sufficient evidence in the record to create a genuine issue of material fact as to whether Dropinski is disabled under the ADA. However, the court ultimately determined that Dropinski was unable to perform the essential functions of the AEO II position, holding that due to the extent of Dropinski's restrictions, any accommodation would amount to a restructuring of the AEO II job, and place an undue burden on Douglas County. Thus, the district court concluded that no reasonable jury could find that Dropinski was a qualified individual under the ADA and granted Douglas County's motion for summary judgment.

## II.    DISCUSSION

This court reviews the district court's grant of summary judgment de novo. Harder v. Acands, 179 F.3d 609, 611 (8th Cir. 1999). In doing so, we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn. Fed. R. Civ. P. 56(c); Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 342 (8th Cir. 1988). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Dropinski must establish that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability. Greer v. Emerson Elec. Co., 185 F.3d 917, 921 (8th Cir. 1999).

"Discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Heaser v. The Toro Co., 247 F.3d 826, 830 (8th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)) (alterations in original).

Under the first element of a prima facie ADA case, we agree with the district court for purposes of this opinion that there is sufficient evidence in the record to create a genuine issue of material fact as to whether Dropinski was disabled under the ADA.[2] We also conclude that Dropinski's ultimate termination satisfies the third requirement of a prima facie ADA case–that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination based on disability. The issue before this court, then, is whether there is a question of fact regarding Dropinski's ability to perform the essential functions of his job with or without accommodation.

---

[2]We note that this assumption is based upon Dropinski's articulation at oral argument that his limitations are, and always have included, lifting, bending, and twisting. These limitations are critical in our assumption because it appears from the record before this court that the focus is on Dropinski's lifting restriction alone. If that is so, Dropinski might not be considered "disabled" for ADA purposes. Under this court's precedent, "a 'general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability.'" Mellon v. Federal Express Corp., 239 F.3d 954, 957 (8th Cir. 2001) (quoting Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997)); but see Webner v. Titan Distrib., Inc., 267 F.3d 828, 834 (8th Cir. 2001) (recognizing that a back injury that substantially limits a person's ability to work, to twist, to bend, and to stand, in addition to limiting their ability to lift could constitute a physical impairment that substantially limits one or more major life activities).

Although Dropinski retains the ultimate burden of proving that he is a qualified individual, an employer who disputes his claim that he can perform the essential functions of the job must put forth evidence establishing those functions. Heaser, 247 F.3d at 831. This evidence may include:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

Id. (quoting Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 787 (8th Cir. 1998) (internal quotation marks omitted)).

Douglas County denies that Dropinski is able to perform the essential functions of the AEO II position. The County assessed Dropinski's bending, twisting, squatting, and lifting restrictions and determined that it was unable to accommodate Dropinski in the AEO II position without undue burden. However, Dropinski asserts that many of the functions Douglas County claims to be essential to the AEO II position are in fact marginal. "'Restructuring frequently involves reallocating the marginal functions of a job,' [but] an employer is not required to reallocate the essential functions of a job." Treanor v. MCI Telecommunications Corp., 200 F.3d 570, 575 (8th Cir. 2000) (quoting Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112-13 (8th Cir. 1995)).

The job description of an AEO II reads as follows:

Duties and Responsibilities
1.      Safely and efficiently operate tandem axle dump trucks and other equipment/machinery, including, but not limited to: flusher truck,

asphalt lay down machine, oil distributor, crack sealer, self propelled roller, skid steer, tractors and related attachments such as mower, auger, seeder, etc.

2. Operate assigned equipment for the removal of ice and snow from roadways.

3. Occasionally operate heavy equipment, including, but not limited to, front end loader as directed.

4. Perform semi-skilled and unskilled laborer tasks incidental to equipment operation or as assigned.

5. Assist maintenance personnel in making mechanical repairs and adjustments to equipment as required. Report maintenance and repair needs to supervisors.

6. Assist mechanics in minor repairs and maintenance to equipment.

7. Assist in cleaning of job sites and equipment.

8. Occasionally direct groups of one or more fellow workers.

9. Perform other related duties as assigned.

Basic Skills and Abilities Required

1. Ability to work and complete duties with minimum supervision.

2. Ability to follow written and oral instructions.

3. Ability to conform to scheduling demands which may include weekends, emergency call-in and overtime.

4. Ability to learn the geography of Douglas County, Nebraska.

5. Ability to lift objects weighing up to 100 pounds.

6. Considerable knowledge of the operation, maintenance and use of tandem and single axle trucks and related equipment.

7. Physical strength and agility necessary to perform manual labor out-of-doors in varying weather conditions.

8. Knowledge of traffic laws and regulations governing equipment operations.

9. Considerable knowledge of the occupational hazards involved and safety precautions necessary for the proper operation of single and tandem axle trucks and other equipment.

Given Dropinski's limitations, he is unable to perform several of the above-mentioned functions without accommodation including, for example, any semi-skilled and unskilled labor tasks involving lifting over fifty pounds, and frequent twisting, bending or squatting. Many of the functions included in the written job description inherently include the possibility of physical exertion that exceeds Dropinski's limitations.

In addition to the written job description, it is Douglas County's judgment that all AEO II's be able to perform general labor functions such as using a pick to pry open sewer covers, operating a jackhammer, being able to lift 100 pounds, and moving tree limbs and pieces of concrete, to name a few. In response, Dropinski says the County focuses on tasks that an AEO II almost never has to perform and that, in fact, Dropinski has never performed some of those functions during his five years of employment with Douglas County. The fact remains, though, that the potential for these functions exist in the AEO II position and that it is difficult for the County to describe with precision exactly what an AEO II will encounter while out working on the rural roads in Douglas County. For example, an AEO II may be required on any given day to move tree branches, adjust tailgates, move culverts, maneuver snow plows, haul and dump dirt or rock from one job site to another, and mount a sander on a truck. Each of these functions entails potential bending, twisting, squatting, and lifting over fifty pounds. Dropinski's specific personal experience is of no consequence in the essential functions equation. Instead, it is the written job description, the employer's judgment, and the experience and expectations of all AEO II's generally which establish the essential functions of the job. See Heaser, 247 F.3d at 831.

We find that the essential functions of an AEO II employee include those general labor functions described in the job description and those articulated by Douglas County and that it is reasonable to expect any AEO II employee to perform those general functions. We note that even though there may not be a significant

amount of time on this job performing one or more of these tasks routinely, id. (recognizing that the amount of time spent on the job performing the function may be evidence of its essentiality), the consequence of not requiring Dropinski to perform these functions demonstrates that they are, indeed, essential. Id. Further, under our review of the record, the current work experience of the other AEO II's demonstrates that these employees must have the ability to perform the above-mentioned tasks. Under these facts, prior to considering any accommodation that may be available to Dropinski, it is apparent that he is unable to perform the essential functions of the AEO II position given the bending, twisting, squatting, and lifting restrictions proscribed by his doctor.

Articulating the essential functions of an AEO II is not the end of our inquiry. We next turn to whether Dropinski has made a facial showing that a reasonable accommodation would enable him to perform his essential job functions. Id. It is Dropinski's position that the accommodations he seeks would not unduly burden the County. Although not set forth by Dropinski directly, these accommodations seem to include taking short breaks each hour while driving the trucks, receiving assistance with lifting more than fifty pounds when the occasion arises, and alternating crew responsibilities when use of the striping machine is required so that Dropinski could drive either the front of the striping machine or the follow-up truck during the process. At one time, Dropinski also requested that Douglas County limit his hours to forty hours per week. Douglas County, on the other hand, argues that "[i]t would be unduly burdensome . . . and a safety risk, to schedule Dropinski on any AEO II assignment knowing that Dropinski's medical limitations will not permit him to handle what can be encountered while driving a truck on a rural Douglas County road." The County notes, for example, that an AEO II does not always work as a member of a team and that Dropinski would certainly be unable to perform certain functions while out on a job alone. Further, the County points out that even though some of the functions they deem essential are not performed on a regular basis, an

AEO II must possess the physical strength and agility necessary to perform these functions and that any accommodation would result in job restructuring.

"While job restructuring is a possible accommodation under the ADA, this court has held that an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir. 1999). Douglas County is not required to reassign existing workers to assist Dropinski in his essential duties, id., and it is clear any accommodation would result in just that. Even if Douglas County could routinely assign Dropinski to the back of the striper truck and allow him to take frequent breaks while driving the trucks, for example, these are only a few of many functions required of an AEO II. It would be unduly burdensome on Douglas County to make the necessary bending, twisting, squatting, and lifting accommodations Dropinski would require as an AEO II. Under this standard, we agree with the district court that no reasonable jury could find that Dropinski was a qualified individual under the ADA because of his inability to perform the essential functions of the job with or without accommodation.

To the extent Dropinski claims that Douglas County failed to engage in an interactive process to determine reasonable accommodation, see id. at 950-954, we conclude that Dropinski failed to create a genuine question of fact on this issue. Douglas County knew of Dropinski's limitations and, in response, indicated that because Dropinski could not perform the job of an AEO II under those restrictions, and because it was unable to accommodate him without undue burden, it would allow him to take a leave of absence until such time as he was able to return to work and perform the essential functions of the position without restrictions. Fjellestad's discussion of the interactive process required under the ADA is inapposite under these facts. In Fjellestad, the plaintiff made a facial showing and created a genuine issue of material fact as to whether Pizza Hut could have reassigned her to a different position as an accommodation. The issue was whether this accommodation was

reasonable and Pizza Hut offered no evidence to suggest that Fjellestad was unable to perform the requested position. Id. at 951. In the instant case, we have already determined as a matter of law that the accommodations noted by Dropinski would place an undue burden on Douglas County. Thus any discussion concerning the interactive process under these facts is superfluous.

## III. CONCLUSION

For the reasons set forth in this opinion, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.