# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1744

_____

Ansaf Alexander,            *
                                   *

      Plaintiff - Appellant,      *
                                   *    Appeal from the United States
     v.                             *    District Court for the
                                   *    District of Minnesota.

The Northland Inn,       *
                                   *

      Defendant - Appellee.     *

_____

Submitted:  November 6, 2002

Filed:  March 5, 2003

_____

Before WOLLMAN, LAY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ansaf Alexander appeals the district court's[1] grant of summary judgment dismissing her claim that The Northland Inn (Northland) violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*, when it terminated her as a hotel housekeeping supervisor.  Viewing the summary judgment record in the light most favorable to Alexander, we conclude that she could not perform the essential job function of vacuuming, with or without accommodation, and therefore affirm.

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

In July 1997, Alexander began working at Northland as a "p.m. housekeeping supervisor," working the 3:00 p.m. to 11:30 p.m. shift. She was in a non-work-related automobile accident in October 1997, which exacerbated prior neck and back injuries and has caused her chronic pain. Alexander resigned from Northland in February 1998 to take another housekeeping position. Her physician prepared a Report of Work Ability for the new employer that listed the following temporary work restrictions resulting from the October 1997 accident: lifting restricted to 30 pounds maximum; repetitive lifting restricted to 10-15 times per hour; no heavy or repetitive pushing or pulling; frequent position changes when sitting or standing; must stretch every 55 minutes; and use of an ergonomic chair.

In May 1998, Northland rehired Alexander as a p.m. housekeeping supervisor. To help preserve its AAA four-diamond rating, Northland requires its housekeeping supervisors to be "working supervisors," assisting the housekeeping staff in maintaining the cleanliness and attractive appearance of the guest rooms and public areas, as well as supervising the staff's work. As a p.m. housekeeping supervisor, Alexander supervised from one to three housekeepers. She concedes that her duties included performing the housekeepers' cleaning tasks when necessary, including vacuuming guest rooms, the common areas, and the large hotel restaurant. Alexander also filled in for the day housekeeping supervisors, performing duties similar to those of her p.m. supervisor position, including vacuuming.

At some time in 1998, Alexander provided her Northland supervisor, Heidi Radke, copies of the February 1998 Report of Work Ability and one or more subsequent physician reports reciting that her temporary work restrictions remained unchanged. Alexander adequately performed her job duties, including vacuuming, until February 24, 1999, when Radke asked her to vacuum a room. Alexander replied that she could not vacuum that day and then instructed another employee to do the job for her, contrary to what Radke expected from a working supervisor. Alexander then took the next two days off, returning to work on February 27 with a chiropractor's

note excusing her for the two days and a Report of Work Activity from her physician listing the following *permanent* work restrictions: lifting and carrying restricted to 10 pounds maximum; repetitive lifting restricted to 0-5 times per hour; no lifting above shoulder height; no heavy or repetitive pushing or pulling; and bending restricted to 35 degrees no more than 4-10 times an hour. Northland's benefits manager, Jennifer Strom, then contacted the physician by facsimile, providing a copy of Alexander's written job description and requesting the following information:

> As the Benefits Mgr. at The Northland Inn . . . it is my responsibility to respond to any type of work restrictions set forth by a physician. . . . [A]lthough this is not a work related injury, I must have confirmation from you that Ms. Alexander is able to perform the essential functions of her position. . . . I am requesting that you provide me with a release or fitness for duty with the understanding of Ms. Alexander's position responsibilities. Please also respond to the following questions,
>
> (1) Occasionally (3-5x daily), Ms. Alexander is asked to vacuum. According to the Report of Workability, she is to do no heavy or repetitive pushing or pulling. I do not consider 3-5x daily repetitive. Will you release her to vacuum no more than 5x daily?
>
> (2) Due to her restricted bending, she is unable to view the floor around the bed in a guest suite. I must ask you if she is able to, instead of bending over, simply move to her knees so that this job responsibility must be completed?

After discussing the request with Alexander, the physician responded by answering "No" to question (1), by answering "yes may kneel to inspect under beds" to question (2), and by adding a handwritten notation at the end of the eighteen essential functions listed on Alexander's job description, "19. No vacuuming."

Northland then terminated Alexander because she was not able to perform an essential function of her job, vacuuming. At the termination meeting, Alexander told

the Northland supervisors that she was working with a physical therapist to assist her in vacuuming at home and asked Northland to give her time to develop this skill. She also asked Northland to transfer her to a day housekeeping supervisor position or delegate her vacuuming duties to other housekeeping staff. Northland responded that her no-vacuuming restriction was permanent, that all housekeeping supervisors must be able to vacuum, and that she did not qualify for any other vacant positions. Alexander testified that when she talked to her physician about the situation after the termination, he advised, "If you are able to vacuum just to go ahead." Alexander applied for approximately sixty jobs in the four months following termination before securing a position as a clerk for the Hennepin County Service Center.

Alexander then commenced this action, alleging that Northland discriminated against a qualified individual with a disability because of the disability. See 42 U.S.C. §§ 12112(a), 12117(a). To establish a prima facie case of disability discrimination under the ADA, Alexander must show that (1) she is disabled as defined in 42 U.S.C. § 12102(2); (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of her disability. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995). The district court granted summary judgment in favor of Northland, concluding that Alexander was not disabled within the meaning of the ADA and, alternatively, was not qualified to perform the essential functions of the p.m. housekeeping supervisor position with or without reasonable accommodation. We need consider only the latter conclusion.

Northland fired Alexander after she refused to vacuum and then submitted a statement by her physician that amended her written job description to provide, "No vacuuming." To survive summary judgment, Alexander must make a prima facie showing that she could perform the essential functions of her job with or without reasonable accommodation. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir. 1998). Conceding that Alexander otherwise possessed the necessary skill,

education, experience, and training to be a p.m. housekeeping supervisor, Northland argued, and the district court concluded, that she could not perform the essential job function of vacuuming, with or without reasonable accommodation. We agree.

The first question is whether vacuuming was an essential function of Alexander's job. Essential functions include "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). An employer's judgment on this question is highly probative. See Moritz, 147 F.3d at 787; 29 C.F.R. § 1630.2(n)(3). Here, Northland's written job description for a housekeeping supervisor included as an essential function, "Provide assistance in other job classifications as determined necessary by immediate superior." Every Northland supervisor testified that this function included vacuuming, which is essential to housekeeping, and Alexander admitted that she occasionally vacuumed, though not three-to-five-times a day. Given the importance of cleanliness to maintaining Northland's AAA four-diamond rating, the limited number of employees available to perform vacuuming and other housekeeping tasks, and Northland's persistent problems with housekeeping staff truancy, we agree with the district court that vacuuming was an essential function of the housekeeping supervisor position. See Summerville v. Trans World Airlines, Inc., 219 F.3d 855, 858 (8th Cir. 2000) (assisting passengers was an essential job function though it required only a few minutes each week), cert. denied, 532 U.S. 1019 (2001).

Because vacuuming was an essential function, Alexander must show she was able to perform that function with or without reasonable accommodation. Alexander first argues she could perform the function without accommodation because she could in fact do the required vacuuming, as she had in the many months prior to February 1999. But Northland was entitled to rely and act upon the written advice from Alexander's physician that unambiguously and permanently restricted her from vacuuming. In this situation, the employee's belief or opinion that she can do the function is simply irrelevant. The ADA does not require an employer to permit an

employee to perform a job function that the employee's physician has forbidden. Also irrelevant is the fact that the physician told Alexander, after termination, that she could go ahead and vacuum. Northland was reasonable in relying on his earlier definitive command, "No vacuuming."

Alexander next argues that she could perform the essential functions of her position with a reasonable accommodation. The ADA plaintiff has the burden of proof on this issue. See Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 727-28 (8th Cir. 1999). In February 1999, Alexander offered no explanation and made no timely request that Northland reasonably accommodate her sudden inability to vacuum, a function she had performed without complaint for many months. When told she had been terminated for this reason, Alexander asked the Northland supervisors to relieve her of vacuuming duties while she worked with a physical therapist to learn how to vacuum without injuring her back and neck. This was not a reasonable accommodation because it would have required Northland to assign Alexander's vacuuming responsibilities to other employees for an indefinite period. "It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform." Moritz, 147 F.3d at 788. Alternatively, Alexander asked to be transferred to a day housekeeping supervisor position. This was not a reasonable accommodation because vacuuming was an essential function for all Northland housekeeping supervisors. See Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1019 (8th Cir. 2000) ("the employee must be otherwise 'qualified' for the reassignment position").

Finally, Alexander argues that, once she requested an accommodation, Northland had a duty to engage in the interactive process discussed in Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951-54 (8th Cir. 1999). However, on the facts of this case, Alexander's post-termination request was "too little, too late." In addition, "there is no per se liability if an employer fails to engage in an interactive process." Id. at 952. Here, Alexander has failed to meet her burden of showing that

a reasonable accommodation was available that would not have placed an undue burden on Northland. Therefore, summary judgment was properly granted on this issue. See Dropinski v. Douglas County, 298 F.3d 704, 710 (8th Cir. 2002).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.