# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2753

———————

| | | |
|---|---|---|
| Leland Melvin Otto, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| City of Victoria, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: May 14, 2012
Filed: July 19, 2012

———————

Before SMITH, ARNOLD, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Leland Melvin Otto was terminated from his employment with the City of Victoria, Minnesota. Otto brought an action against his former employer, alleging violations of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Due Process Clause of the Fourteenth Amendment, and state law. The district court[1] granted summary judgment in favor of the City. Otto appeals the dismissal of his federal claims, and we affirm.

———————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

I.

Between 1985 and 2009, Otto worked in the City's Department of Public Works, eventually rising to the position of Public Works Worker II. According to the position description, Otto's job required the performance of "non-supervisory, semi-skilled and skilled operational and maintenance responsibilities in all department areas." These duties are varied, and include activities such as patching and repairing curbs and gutters, snow plowing, mowing, tree trimming, trash and hazard removal, sewer cleaning, and maintenance of streets, parks, and buildings. While in this position, Otto twice sustained workplace injuries to his back, first in 1990 and again in 2006. Each time, Otto resumed work after the injury and returned to his typical duties.

Otto experienced numbness in his left leg in January 2007. He then saw a doctor, who ordered him that same month to stop working. Otto underwent surgery in August of that year. On September 11, 2007, his physician, Dr. Galicich, indicated in a workability report that Otto was totally disabled and would remain so for an indeterminate period of time. Dr. Galicich then referred Otto to another physician, Dr. Wei.

In December 2008, Dr. Wei cleared Otto to perform four hours of sedentary work per day. Otto did not return to work, however, because the City had no position available that could accommodate Dr. Wei's restrictions. That same month, Otto also underwent a functional capacity evaluation, which concluded that he could frequently carry weights of up to five pounds, occasionally lift weights of up to fifteen pounds, and seldom lift weights of up to thirty-five pounds. Dr. Wei noted in a subsequent disability form dated January 6, 2009, that the work restrictions were permanent. Throughout this period, Otto received workers' compensation benefits, including pay benefits, health insurance, and vacation and sick time accrual.

The City's personnel committee eventually recommended that the City terminate Otto's employment, and the city council discussed the issue at a meeting on February 23, 2009. Otto attended the meeting, and asserted that he was able to return to work. The city council nonetheless adopted a resolution terminating Otto's employment with the City. According to Otto, the City later replaced him with workers in their twenties. At the date of his termination, Otto was 59 years old.

## II.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Otto, the nonmoving party. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 514 (8th Cir. 2011).

## A.

The ADA provides that an employer may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Otto offered no direct proof of discrimination, so the district court examined his ADA claim using the burden-shifting analysis described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). Because the record has been fully developed with respect to the motion for summary judgment, however, we may proceed directly to the "ultimate question of discrimination *vel non*." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983); *see Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008).

For his ADA claim to survive summary judgment, Otto must show that he was qualified to perform the essential functions of his position, with or without reasonable accommodation. *Kiel*, 169 F.3d at 1135; *see* 42 U.S.C. § 12111(8)-(9). The essential functions of a Public Works Worker II include few sedentary duties and frequent lifting of objects weighing fifty pounds. Limited as he is to four hours of sedentary work per day and unable to engage in heavy lifting, Otto is physically incapable of fulfilling these responsibilities. While it is true that Otto told the city council that he could still perform these functions, his assertion was undermined by his own physician's determination that Otto's disability permanently restricts his ability to work. The ADA "does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003).

Otto also enumerates several accommodations that he says the City should have provided so that he could perform the job. He suggests that the City could have limited his job to sedentary duties, offered him a part-time job as an ice-hockey rink attendant, or assigned other employees in the Department of Public Works to assist him in carrying out his job. These proposed accommodations are not reasonable. The ADA does not require an employer to create a new position or to eliminate or reallocate essential job functions in accommodating an employee with a disability. *See Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). And in any event, Otto points to no evidence that a position accommodating his disability was available at the time of his termination, or that he ever applied for such a position.

Otto argues that he could have performed the essential functions of his job if the City had provided a back brace or similar support. The record does not establish a genuine issue of fact about whether this accommodation would be sufficient. While Otto's functional capacity evaluation mentions that using a lumbar roll improved his

tolerance for sitting, Otto cites no evidence suggesting that a back brace would have addressed his work restrictions concerning heavy lifting.

Finally, Otto contends that there is a disputed issue of fact for trial, because one member of the city council, in explaining her vote against Otto's termination, questioned whether the City had exhausted all opportunities for reasonably accommodating Otto. Otto cites the deposition testimony of Councilmember Kimberly Roden that "the information that was in front of me did not give me confidence of a hundred percent ability that we couldn't accommodate Mr. Otto at least part of the year by virtue of doing lawn mowing, for example." Roden Dep. 10. But in the very next sentence, Roden clarified the circumstances of her vote:

> However, having said that, . . . I'm not an expert in either Mr. Otto's injuries nor in all of the things that the Public Works staff is expected to do. So based on what I felt was not really detailed information, I didn't feel comfortable with making a vote that would terminate the employment.

*Id.* These statements do not raise a genuine issue of fact as to whether reasonable accommodation was possible, because they provide no evidence relevant either to Otto's disability or the essential functions of his job. The only potential accommodation mentioned—allowing Otto to continue working part-time mowing lawns—would have involved creating an entirely new position for Otto, and the ADA does not require that step. We therefore conclude that summary judgment on Otto's ADA claim was proper.

## B.

Otto next argues that his termination violates the ADEA, which makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a); *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

-5-

167, 175-78 (2009). Once again, because the factual record was fully developed at the summary judgment stage, we proceed directly to the ultimate question of discrimination. *See Hervey*, 527 F.3d at 719.

The only evidence that Otto offers to show age discrimination is the fact that workers in their twenties assumed his duties after he was terminated. This fact alone cannot support a reasonable inference of age discrimination. *See Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007). In any event, a claim of age discrimination under the ADEA requires that a plaintiff be qualified for the position from which he was terminated. *See Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). As already explained, Otto's disability prevents him from performing the essential functions of a Public Works Worker II. He therefore is no longer qualified for the position, and his claim of age discrimination fails for that reason as well.

C.

Otto contends that the City deprived him of property without due process of law by discharging him without a formal hearing. Where state law creates a property right in continued employment, due process requires that the employee receive notice and a pretermination hearing with an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Otto, however, has demonstrated no such property interest in continued employment. He cites Minnesota case law for the proposition that due process required that a neutral hearing examiner decide his case, but these precedents concern public employees who enjoyed a statutory right in continued employment. *See, e.g., Ganyo v. Indep. Sch. Dist. No. 832*, 311 N.W.2d 497, 498 (Minn. 1981) (applying a state teacher tenure statute); *In re Hahn*, 386 N.W.2d 789, 791 (Minn. Ct. App. 1986) (relying on a Minnesota statute that provides "a certain class of coaches with minimal due process rights when their coaching duties are terminated"). Otto, by contrast, was an at-will employee, and the City's termination of his employment did not deprive him of a property interest protected

by the Fourteenth Amendment.  *See Bishop v. Wood*, 426 U.S. 341, 347 (1976).  He thus had no a constitutional right to a hearing.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed.

———————————————