# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1381

_____

Yulanda Hill,

*Plaintiff - Appellant*,

v.

Carolyn Walker, individually and in her official capacity as employee of the
Department of Human Services,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 25, 2013
Filed: December 16, 2013

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Yulanda Hill sued her supervisor, Carolyn Walker, individually and in her
official capacity as an employee of the Arkansas Department of Human Services ("the
Department"), alleging that Walker violated the Family and Medical Leave Act
("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201 *et seq.* Hill asserted that Walker contravened these statutes by refusing

to grant Hill certain leave time that she requested and by failing to pay her for accrued leave time. Based on the Department's termination of her employment, Hill also brought discrimination and retaliation claims against Walker in her official capacity under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and against the Department under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The district court[1] granted a motion to dismiss the FMLA and FLSA claims and later granted summary judgment in favor of Walker and the Department on the ADA and Rehabilitation Act claims. We affirm.

I.

As Hill is the nonmoving party, we describe the facts in the light most favorable to her. Hill began working for the Department as a Family Service Worker on June 28, 2010. Her job description stated that "frequent exposure to physical and verbal abuse is required," and that "[f]ederally mandated service deadlines coupled with heavy case loads and the life and death nature of the work creates a stressful environment."

Hill suffers from depression and anxiety, conditions that apparently worsened under the stress of her job. Hill failed to appear at court hearings for her clients on at least two occasions, in January and March 2011, before the events that gave rise to this suit. On both occasions, Hill stated that she missed work because she suffered "frequent anxiety and panic attacks" and was "stressed out."

On May 24, 2011, Hill sent an e-mail to Walker and seven other officials at the Department informing them that she was "removing [herself] from [a] case." Her e-mail detailed several instances of harassment and verbal abuse, including racial slurs,

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

from the client in that case. The next day, Hill met with Walker, another supervisor, and the director of the Department. Walker explained that Hill could not unilaterally remove herself from the case and that her experience with the difficult client was the "nature of this business." The director and Walker offered Hill several other ways to address the situation, including additional training, a "special staffing" where Hill's supervisors would meet with her, the client, and attorneys, and accompaniment by a supervisor or security guard when Hill went on home visits for the case. Hill resisted, leading Walker to say that "we need to at least try it." During the meeting, Hill stated that she was on medication for job stress, was having anxiety attacks, and needed to leave work because of the stress. She left work for the day after the meeting.

The next day, Hill returned to work with a doctor's note placing her under a physician's care for "illness" from May 25 until June 20, 2011. Hill asked to use her accrued compensatory time to cover her leave, which Walker approved, and someone at the Department gave her "FMLA paperwork," according to her complaint. The Department later determined that Hill was ineligible for FMLA leave because she had not been employed for twelve months.

On May 31, Walker sent Hill a certified letter stating that she was reversing the initial decision to grant Hill all of her requested compensatory leave time because her leave would "impose an unreasonable burden on the agency." One caseworker had resigned that day and another was out on sick leave. The letter requested that Hill return to work on Monday, June 6. It also stated that the agency would work with Hill to allow her to use her compensatory time, but that she could not use it all in the two and a half weeks that followed.

Hill did not reply to the letter and did not appear for work on June 6. On June 7, Hill e-mailed Walker, asking Walker to "respect [her] time off for medical leave," and stating that it was "very unprofessional and unethical" of Walker to send her the certified letter demanding she return to work. Hill concluded that she would "return

-3-

to work on Monday, June 20, 2011 per [her] doctor's orders." Walker then sent Hill a letter dated June 17, 2011, notifying Hill that because she had violated Department policy by failing to comply with reasonable work-related instructions, Walker had terminated her employment.

Hill filed an internal grievance with the Department, which held a fact-finding hearing on August 16, 2011. At the hearing, Walker stated that she terminated Hill because Hill refused to return to work on June 6 and failed to respond to the request that she return until June 7. The agency official hearing the grievance upheld Hill's termination, concluding that it was "an appropriate response to [Hill's] actions. The termination is due to medical reasons and Ms. Hill's inability to return to work." Hill sued, and the district court granted Walker's motion to dismiss the FMLA and FLSA claims. Later, the court granted summary judgment for Walker and the Department on the ADA and Rehabilitation Act claims. Hill appeals.

## II.

We first address the dismissal of Hill's claims under the FMLA. Hill alleges that Walker terminated her so she would not become eligible for FMLA leave. She claims that if Walker had granted her compensatory leave time, then Hill would have become eligible for FMLA leave. Read in the light most favorable to Hill, her complaint alleges that the termination prevented her from exercising her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1), and that Walker terminated her because she attempted to exercise FMLA rights, a claim that also "likely arises under the rule of § 2615(a)(1) that an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights defined by the FMLA." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).

Both of Hill's claims fail for the same reason: she is not an "eligible employee" under the FMLA. To be eligible for rights under the FMLA, an employee

must have worked for her employer for at least twelve months. 29 U.S.C. § 2611(2)(A)(i). Hill's complaint alleges that Hill worked for the Department from June 28, 2010, until June 20, 2011. As this period spans fewer than twelve months, Hill had no FMLA rights when she was terminated.

Hill relies on decisions from other jurisdictions holding that the FMLA protects pre-eligibility requests for post-eligibility leave. *See, e.g.*, *Pereda v. Brookdale Senior Living Cmties., Inc.*, 666 F.3d 1269, 1274-75 (11th Cir. 2012). But even if the rationale of these authorities were adopted in this circuit, it would not aid Hill. Hill did not allege that she requested to take leave after June 28, 2011, the date on which she would have become eligible for FMLA leave. She sought only to take leave before she was eligible, and that request is unprotected by the statute. *See Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004).

Hill argues that even if she were ineligible for FMLA leave under the terms of the statute, the Department, like the employer in *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002), should be estopped from denying her FMLA leave. In *Duty*, the employer explicitly guaranteed the employee thirty-four weeks of leave under the FMLA, but later terminated him on the ground that he failed to return to work after exhausting all twelve weeks of FMLA leave to which the statute entitled him. This court affirmed the district court's ruling that the employer was equitably estopped from contesting the employee's eligibility to assert a claim under the FMLA, because the employee relied to his detriment on the employer's written guarantee. *Id.* at 493-94. Unlike the plaintiff in *Duty*, however, Hill did not allege in her complaint that her employer guaranteed her more FMLA leave than the statute allowed or that she relied to her detriment on such a representation. The complaint asserts only that the Department gave her unspecified "FMLA paperwork."

-5-

Hill was not eligible for leave under the statute, and the Department was not estopped from raising that defense. The district court correctly dismissed Hill's FMLA claims.

## III.

Hill next challenges the district court's dismissal of her claim based on the FLSA. She contends that Walker violated the statute by failing to pay Hill for her accrued compensatory leave. The district court dismissed the claim on the ground that Hill did not plead that Walker was personally responsible for making the payments.

Assuming for the sake of analysis that an official may be liable in her individual capacity for a violation of the FLSA, *cf. Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), Hill did not plead adequately that Walker violated the statute. Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). This means, at a minimum, that an individual employee must be "responsible in whole or part for the alleged violation" to incur individual liability. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). While Hill alleged that Walker had the authority to fire her, she did not plead that Walker controlled her compensation or made the decision not to pay her for accrued compensatory time. We agree with the district court that "[t]he mere fact that Walker's termination of Hill eventually resulted in Hill failing to receive payment for compensatory time from [the Department] does not, by itself, make Walker the person responsible for the State's failure to pay for any compensatory time allegedly owed to Hill." The court properly dismissed the FLSA claim against Walker.

-6-

IV.

Hill also challenges the district court's adverse grant of summary judgment on her claims under the ADA and the Rehabilitation Act. We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Hill, the nonmoving party. *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 929 (8th Cir. 2012). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Hill alleges disability discrimination and retaliation under the ADA and the Rehabilitation Act. As relevant to the issues here, decisions interpreting either the ADA or the Rehabilitation Act are applicable and "interchangeable" to claims under each statute. *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363-64 (8th Cir. 2003); *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996).

A.

The ADA makes it unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Rehabilitation Act likewise forbids discrimination against an "otherwise qualified individual with a disability . . . , solely by reason of her or his disability." 29 U.S.C. § 794. "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish discrimination under the ADA, an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability. *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). To be a qualified individual under the ADA, an employee must "(1) possess the requisite skill, education, experience, and training for [her] position, and

(2) be able to perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (internal quotation omitted); *see also* 42 U.S.C. § 12111(8).

Hill claims that Walker and the Department violated the ADA and the Rehabilitation Act by failing to remove her from the stressful case or to grant her the full amount of leave she requested. Walker does not dispute that Hill is a person with a disability, but argues that Hill is not a qualified individual under the ADA because she cannot perform an essential function of her position—handling stressful cases. Hill responds that she did not request removal from *all* stressful cases, but only one particularly stressful case, and that handling this single case was not an essential function of her job as a Family Service Worker.

Essential functions of a position are the fundamental duties of the job, but not its marginal functions, *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 900 (8th Cir. 2006), and "much of the information which determines those essential functions lies uniquely with the employer." *Kallail*, 691 F.3d at 930 (internal quotation omitted). A job function may be essential if the reason the position exists is to perform that function, or if a limited number of employees are available among whom the performance of that job function can be distributed. 29 C.F.R. § 1630.2(n)(2). To determine whether a job function is essential, the governing regulations call for us to consider the following:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

-8-

*Id.* § 1630.2(n)(3).

Walker and the Department argue that dealing with a difficult case or stressful client is simply the "nature of this business" for a Family Service Worker; their judgment is entitled to weight under the regulations. The employer's judgment is consistent with Hill's written job description, which explains that the position requires "frequent exposure to physical and verbal abuse," warns of a "stressful environment," and states that the job involves "regular contact with clients." Hill's suggestion that the Department must carve out her work on one stressful case and deem it a nonessential function is inconsistent with the nature of the position. The ability of individual caseworkers to pick and choose among case assignments based on their toleration of stress could wreak havoc with management of the agency, especially considering that the Department already was short staffed during Hill's leave. *See Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998). We conclude that Hill's handling of stressful cases, including this particular case, was an essential function of her position.

Walker and the Department offered to accommodate Hill by arranging other ways to deal with the difficult case, including "special staffing" and supervisor accompaniment on visits. But Hill maintained all along that the only accommodation she would accept was removal from the case. An employer "need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." *Kallail*, 691 F.3d at 932 (internal quotation omitted); *see Alexander v. Northland Inn*, 321 F.3d 723, 727-28 (8th Cir. 2003). Because removing Hill from the case would have required assumption of that function by another Family Service Worker, removal was not a reasonable accommodation. Hill refused to accept any other accommodation, so she cannot show that she was able to perform the essential function of her position with a reasonable accommodation.

Hill argues that Walker and the Department failed to engage in an interactive process with her to determine whether a reasonable accommodation was possible. "There is no *per se* liability under the ADA if an employer fails to engage in an interactive process, but the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is *prima facie* evidence that the employer may be acting in bad faith." *Kallail*, 691 F.3d at 933 (internal quotation and citation omitted). To establish that an employer failed to participate in the interactive process, an employee must show, among other things, that the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id.* Hill cannot make this showing, because she admits that Walker and the Department did offer her other ways of handling the case, and she refused to consider any accommodation other than her demand for removal from the case.

Because Hill could not perform the essential functions of her position, with or without reasonable accommodation, she failed to create a genuine issue for trial on a claim of discrimination under the ADA. The district court properly dismissed the claim.

B.

Hill also challenges the district court's grant of summary judgment on her retaliation claim under the ADA and Rehabilitation Act. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). This court also has held that a person who is terminated after unsuccessfully seeking an accommodation may pursue a retaliation claim under the ADA, if she had a good faith belief that the requested accommodation was appropriate. *Heisler v. Metro. Council*, 339 F.3d 622,

632 (8th Cir. 2003). This circuit also has recognized a cause of action for retaliation under the Rehabilitation Act, although the textual basis for the claim is not well explained in our cases. *See Neudecker*, 351 F.3d at 363-64; *Hoyt v. St. Mary's Rehab. Ctr.*, 711 F.2d 864, 867 (8th Cir. 1983); *cf. Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007). In any event, our precedent says that we treat retaliation claims under the two statutes interchangeably. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.3 (8th Cir. 2006); *Neudecker*, 351 F.3d at 364.

Hill argues that she demonstrated retaliation because she was terminated only after she wrote the June 7 letter demanding that Walker "respect [her] time off for medical leave." According to Hill, her termination ten days after this protected activity creates an inference of discrimination.

To establish unlawful retaliation under the ADA, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999). While a district court considering such a claim typically proceeds under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), the record was fully developed on Hill's motion for summary judgment, so we may proceed directly to the ultimate question of discrimination *vel non*. *Otto v. City of Victoria*, 685 F.3d 755, 758 (8th Cir. 2012).

We assume for the sake of analysis, in light of *Heisler*, that Hill's act of requesting accommodation, including her letter requesting that Walker "respect" her leave time, was protected activity under the ADA. *See Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 908 (8th Cir. 2010). Termination, of course, is an adverse action. But Hill's only evidence of a causal connection is temporal proximity: Walker terminated Hill ten days after Hill's letter regarding leave. Walker testified, however, that she discharged Hill for failing to return to work as required, just eleven days

before the adverse action and one day before the letter. Especially where the employer's proffered reason for action is virtually contemporaneous with the protected activity, we are disinclined to declare a genuine issue of fact for trial based on temporal proximity alone. *See Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001). Hill's only other suggested evidence of unlawful motive is the statement of the agency official who decided Hill's grievance that the termination was due in part to "medical reasons." But the reviewing official never suggested that Hill was terminated because she requested an accommodation, as is necessary to establish liability for retaliation. The reference to "medical reasons," read in context, was simply shorthand for the agency's conclusion that Hill was not able to perform the essential functions of her position.

We therefore conclude that there is no genuine issue for trial on Hill's claim of unlawful retaliation, and the district court properly granted summary judgment on this claim.

\*       \*       \*

The judgment of the district court is affirmed.

_____

-12-