# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1248
_____

Javonda Scruggs

*Plaintiff - Appellant*

v.

Pulaski County, Arkansas

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: December 17, 2015
Filed: April 1, 2016
_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Javonda Scruggs appeals the district court's[1] grant of summary judgment in favor of Pulaski County, Arkansas, on claims she brought against the county alleging

---

[1]The Honorable Joe J. Volpe, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

that it discriminated against her in violation of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 (Section 504), and retaliated against her in violation of the ADA, Section 504, the Arkansas Civil Rights Act (ACRA), and the Family Medical Leave Act (FMLA).[2]  Because we agree with the district court that Scruggs has not established a prima facie case of discrimination under the ADA or Section 504, or a prima facie case of retaliation under the ADA, Section 504, the ACRA, or FMLA, we affirm.

## I.  Background

Scruggs worked as a Pulaski County juvenile detention officer from November 24, 2001, to May 21, 2013.  Scruggs suffers from fibromyalgia and degenerative disc and cervical disease.  Beginning in 2008, Scruggs obtained an annual FMLA certification from her doctor, allowing her to exercise unpaid intermittent leave.  By February 2013, her conditions had deteriorated to the point that Dr. Mocek, a pain management specialist who had been treating Scruggs, placed restrictions on her FMLA certification including "no sitting, standing, bending, and stooping for extended periods" and no lifting of more than 25 pounds.

One of the requirements listed in the job description for the position of juvenile detention officer is the "[a]bility to lift and carry up to 40 [pounds]."  Because Dr. Mocek restricted Scruggs to lifting no more than 25 pounds, county officials placed Scruggs on continuous, rather than intermittent, FMLA leave.  While on FMLA leave, Scruggs asked Dr. Mocek to issue a new FMLA certification without any restrictions, but he refused.

---

[2]Scruggs also brought claims of race and gender discrimination in violation of 42 U.S.C. § 1983 and the ACRA, but abandoned these claims in her response to the county's motion for summary judgment.

Scruggs's FMLA leave expired on May 15, 2013.  Before it expired, Scruggs asked the county for an additional week of unpaid leave to allow her to obtain an FMLA certification from her rheumatologist, Dr. Chi.  Scruggs claims Dr. Chi would have given her an FMLA certification with no lifting restrictions, but Scruggs never provided the county with an FMLA certification from Dr. Chi.  The county initially agreed to allow Scruggs the extra week, but on May 21, 2013, decided to terminate her employment because she could not meet the job requirement of lifting 40 pounds.  In its termination letter, the county told Scruggs her employment was valuable and encouraged her to reapply if a change in circumstances allowed her to return to work.

Scruggs sued the county, and the county moved for summary judgment.  The district court granted the county's motion.  With regard to Scruggs's discrimination claim, the district court found Scruggs's inability to lift up to 40 pounds disqualified her from working as a juvenile detention officer.  As to her retaliation claim, the court found Scruggs failed to show a causal connection between her use of FMLA and her termination from her job.  This appeal followed.

## II.  Discussion

Scruggs first challenges the district court's grant of summary judgment to the county on her claims of discrimination under the ADA and Section 504.  Our review of a district court's grant of summary judgment is de novo.  Bahl v. Cty. of Ramsey, 695 F.3d 778, 783 (8th Cir. 2012).  We view the evidence in the light most favorable to the nonmoving party.  Id.  Summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to avoid summary judgment, Scruggs must offer proof sufficient to raise a genuine issue of material fact on each element of her claim on which she has the burden of proof.  Olsen v. Capital Region Med. Ctr., 713 F.3d 1149, 1153 (8th Cir. 2013).

The ADA and Section 504 make it unlawful to discriminate against a "qualified individual with a disability" because of the disability. Bahl, 695 F.3d at 783.[3] In order to establish disability discrimination under the ADA, Scruggs must first show that she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of her disability." Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 845 (8th Cir. 2015). Here, the parties dispute whether Scruggs is a "qualified individual." To be considered a qualified individual under the ADA, an employee must "(1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013) (quoting Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003) (alteration in original)). "Discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Dropinski v. Douglas Cty., Neb., 298 F.3d 704, 707 (8th Cir. 2002) (quoting Heaser v. The Toro Co., 247 F.3d 826, 830 (8th Cir. 2001)) (alterations in original). The district court found Scruggs was not a qualified individual because she could not perform the essential functions of her position with or without reasonable accommodation.

Scruggs disputes that the ability to lift or carry 40 pounds was an essential function of the position of juvenile detention officer because she did not often have to do it. Essential functions are those considered fundamental to the position the disabled person desires. Hill, 737 F.3d at 1217. "A job function may be essential if the reason the position exists is to perform that function, or if a limited number of

_____

[3]The statutes are "similar in substance" and, except for Section 504's requirement that there be federal funding involved, our "cases interpreting either are applicable and interchangeable." Bahl, 695 F.3d at 783 (quoting Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999)).

employees are available among whom the performance of the job function can be distributed." Id. In determining whether a job function is essential, we consider evidence including what functions the employer thinks are essential, written job descriptions, how much time an employee spends on the job performing the function, the consequences of not having the employee perform the function, and whether other current employees in similar jobs perform the function. Id.

The county argues that the requirement to be able to lift at least 40 pounds is related to one of the core purposes of being a juvenile detention officer—the ability to protect juveniles being supervised from harming themselves and others, including detention center staff. Although not conclusive, we consider the employer's judgment of what constitutes an essential function "highly probative." Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 786 (8th Cir. 2004) (quoting Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003)). Other evidence supporting the district court's conclusion that lifting 40 pounds was an essential function of the position includes the written job description, and testimony that all other current staff members were able to lift 40 pounds. As for the consequences of not requiring Scruggs to lift 40 pounds, the facility director, Carma Gardner, testified she once had to hold up a detainee who had attempted to hang himself until another staff member arrived to assist. Scruggs concedes the job sometimes required her to lift detainees off the ground and to restrain juveniles, all of whom weigh more than 40 pounds. We agree with the district court that the ability to lift 40 pounds is an essential function of the job of a Pulaski County juvenile detention officer. See Dropinski, 298 F.3d at 708–09 (the ability to lift considered an essential function of job even though employee seldom had to do so).

Scruggs next argues that she would have been able to perform the essential functions of a juvenile detention officer with a reasonable accommodation. It is Scruggs's burden to make "a facial showing that a reasonable accommodation would enable [her] to perform [her] essential job functions." Id. at 709. Scruggs offers two

accommodations she insists were reasonable: allow her a week of unpaid leave after her FMLA leave expired so that she could obtain a different FMLA certification or move her to the 11:00 p.m. to 7:00 a.m. shift. The county argues that neither accommodation was reasonable.

An employer is not required to provide the specific accommodation requested or preferred by an employee. Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1019 (8th Cir. 2000). Rather, an employer only has to provide an accommodation that is reasonable. Id. Scruggs's first proposed accommodation—a request for an additional week to obtain an FMLA certification from her rheumatologist, Dr. Chi—is not a reasonable accommodation. The FMLA only entitles an employee to twelve weeks of leave per year; it does not entitle an employee to extended leave once the twelve weeks has been used. See Slentz v. City of Republic, Mo., 448 F.3d 1008, 1010–11 (8th Cir. 2006) ("Under the FMLA, twelve weeks of leave is both the minimum the employer must provide and the maximum that the statute requires.") (quoting Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 937 (8th Cir. 2000)).

Even if we were to find that extending Scruggs's FMLA leave was a reasonable accommodation under the ADA, Scruggs did not carry her burden to show that she could perform the essential functions of her job with that accommodation. See Alexander, 321 F.3d at 727 (it is the ADA plaintiff's burden to show that she could perform the essential functions of her job with a reasonable accommodation). According to Scruggs, Dr. Chi would have given her a revised FMLA certification clarifying she could perform all of her job functions. But Scruggs never presented the certification, and she never produced any documentation to support her claim that Dr. Chi would have given her a revised FMLA certification. And even if Scruggs had presented a new FMLA certification from Dr. Chi that lifted any restrictions, the county was not required to accept Dr. Chi's FMLA certification over Dr. Mocek's certification. "The ADA does not require an employer to permit an employee to

perform a job function that the employee's physician has forbidden." Id. It is not reasonable to expect an employer to disregard an employee's treating physician's opinion expressly imposing physical restrictions. Id. As for moving her to the 11:00 p.m. to 7:00 a.m. shift, Scruggs has made no showing that it would not be necessary for her to be able to lift 40 pounds on this shift, in contrast to any other shift, in order to protect juveniles housed in the facility. Accordingly, we conclude Scruggs has failed to show that a reasonable accommodation was available.

Finally, Scruggs asserts the county failed to engage in an interactive process to determine whether a reasonable accommodation was possible. But "[u]nder the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process." Battle v. United Parcel Serv., Inc., 438 F.3d 856, 864 (8th Cir. 2006). As outlined above, Scruggs did not meet her burden to show there was a reasonable accommodation available that would not place an undue burden on the county. Accordingly, we agree with the district court that the county was entitled to summary judgment on her discrimination claim. See Dropinski, 298 F.3d at 710.

Scruggs also alleged retaliation claims under the FMLA, ADA, Section 504, and ACRA. To establish unlawful retaliation under any of these four statutes when there is no direct evidence, Scruggs must first establish a prima facie case by showing she engaged in a statutorily protected activity, the county took an adverse action against her, and there was a causal connection between the adverse action and the protected activity. Hill, 737 F.3d at 1218 (ADA[4] and Section 504 retaliation claim); Phillips v. Mathews, 547 F.3d 905, 912 (8th Cir. 2008) (FMLA retaliation claim).

---

[4]"ADA and ACRA claims are reviewed under the same principles." Battle, 438 F.3d at 860–61.

Scruggs characterizes the request for additional time to obtain a revised FMLA certification from Dr. Chi as an ADA accommodation and thus a statutorily protected activity. See Kirkeberg v. Can. Pac. Ry., 619 F.3d 898, 907–08 (8th Cir. 2010) (making a request for a reasonable accommodation is protected activity). Scruggs asserts the timing of her termination shows a causal connection between her protected activity and the county's adverse employment action. As we have concluded, however, Scruggs's request for additional time to obtain a new FMLA certification was not a reasonable accommodation, and therefore it was not protected activity. See Kirkeberg, 619 F.3d at 907–08. As a result, Scruggs has failed to present a submissible case of retaliation under the ADA.

Scruggs also asserts the county violated the FMLA by placing her on consecutive, rather than intermittent FMLA leave, and then terminating her after her FMLA expired. "[A]n employee must be able to perform the essential functions of the job to take intermittent or reduced schedule leave." Hatchett v. Philander Smith Coll., 251 F.3d 670, 677 (8th Cir. 2001) (citing 29 U.S.C. § 2614(a)(1)). And "an employee is not entitled to restoration if, at the end of the FMLA leave period, the employee is still unable to perform an essential function of the job." Id. (citing 29 C.F.R. § 825.214). Because Scruggs was unable to perform an essential function of her job, the county did not violate FMLA by placing her on consecutive rather than intermittent leave. And because she still was unable to perform an essential function of her job at the end of her FMLA leave period, the county did not violate FMLA by terminating her after her FMLA expired.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____