# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1606

———————————————

Jessica Ehlers

*Plaintiff - Appellant*

v.

University of Minnesota

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: March 17, 2022
Filed: May 19, 2022

——————————

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Jessica Ehlers sued her former employer, the University of Minnesota, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, for discrimination based on her disability, failure to provide a reasonable

accommodation for her disability, and retaliation. The district court[1] granted summary judgment to the University. Ehlers appeals, and we affirm.

## I.

Jessica Ehlers began working at the University of Minnesota's Boynton Health Service ("Boynton") in 2012. In 2014, Ehlers was diagnosed with Temporomandibular Joint Syndrome ("TMJ"), a condition that can affect the jaw by causing popping, clicking, muscular dysfunction, and pain. It can also affect the ability to speak. In 2015, Ehlers was transferred to an administrative position in Boynton's Office of Student Health Benefits ("OSHB"). Ehlers's new position was primarily a customer-service position that involved answering customer questions by phone, in person, and by email, and resolving customer issues.

In the summer of 2016, due to the speaking involved in Ehlers's job, she requested almost six weeks of Family and Medical Leave Act ("FMLA") leave and accommodations when she returned, including a reduced schedule with a four-hour workday one to two times per week for medical appointments and for TMJ flare-ups. The University approved the leave request and accommodations. Additionally, Ehlers, through her doctor, asked for the University to grant two more accommodations: (1) reduce the need for constant speaking, such as by providing breaks from speaking, either every other hour or fifteen minutes of each hour; and (2) reassign her to a different job. Soon after, she also requested nonspeaking work for fifteen minutes before her lunch break or reassignment to a job that could accommodate these restrictions. The University denied the requests because Ehlers's customer-service job required extensive interaction with customers and "cannot be restructured to a non-speaking or reduced speaking position." The University told Ehlers that there were no jobs in Boynton that could accommodate her restrictions but that she could talk to the University's Disability Resource Center

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

to discuss a transfer outside of Boynton. Ehlers did not want to participate in the job-transfer process because it would require her first to quit her Boynton job.

When Ehlers returned from FMLA leave, she had a reduced schedule and time off for flare-ups and medical appointments. The University considered adopting two technologies that would reduce Ehlers's need to speak, but one was not compatible with Boynton's phone system, and Ehlers rejected the other one because her doctor advised her to limit eye and facial movements.

In December 2016, Ehlers asked the University to grant three more accommodations: (1) allow additional nonspeaking breaks as needed, (2) not reduce her lunch period because of her additional breaks, and (3) provide her with a phone that can manage and record break times. The University agreed to schedule fifteen-minute nonspeaking breaks every hour, without reducing her lunch period, and investigate new phones, and it reiterated its offer to help Ehlers find a different position. In January 2017, Ehlers asked the University to grant more accommodations: (1) provide an ergonomic evaluation of her workstation to ensure that her chair supports her neck, a monitor adjustment, and a sit-to-stand workstation; (2) not require her to use devices controlled by facial and eye movement; (3) minimize the need for her to use facial expressions; and (4) provide a quiet work environment.

In March 2017, Ehlers requested time off to attend medical appointments and therapies one to two times per week and to be reassigned to a job with no more than four hours of speaking per day. She also asked the University to grant new accommodations: (1) restrict lifting to no more than twenty pounds, and (2) arrange for an occupational-medicine consultation. In response, the University again offered to help Ehlers find a different position and invited her to visit the University's job center to identify jobs of interest and talk with a job counselor. Ehlers also notified the University that she had been diagnosed with acute neck-muscle strain, upper-back pain, bilateral hand pain, tendonitis of the elbow or forearm, head and face

-3-

pain, anxiety, and PTSD, and she told the University that she experienced "overuse injuries" from "constant typing" in the OSHB position.

In March, Ehlers informed the human resources coordinator of four jobs in which she was interested and requested information about them. When the University responded twelve days later, it said that it was "contacting the units where the jobs identified by Ms. Ehlers are posted" to get "information relating to her work restrictions." That same day, Ehlers requested information about two more jobs. Two days later, Ehlers identified four more jobs of interest to her.

In late March and early April, Ehlers, her attorney, and the University prepared a lengthy questionnaire to collect information about the jobs, but by the time it was forwarded to the hiring supervisors, two of the positions had been filled. One hiring supervisor returned the information, but the position was inconsistent with Ehlers's work restrictions because it was a forward-facing front-desk position in a loud, fast-paced, demanding, and stressful work environment; it required more than four hours of speaking per day; it could not accommodate speaking restricted to every other hour; and it required "a lot" of typing.

While Ehlers was inquiring about reassignment, she requested full-time medical leave for three weeks and reduced hours for an additional five weeks. The University approved Ehlers's request, but in April after she requested an extension of her leave, the University denied the extension request. It explained that because Ehlers could not work a full schedule, an essential function of her job, it was firing her.

After Ehlers was fired, she filed two Equal Employment Opportunity Commission ("EEOC") charges against the University. The EEOC dismissed the charges and notified Ehlers of her right to sue. Ehlers sued the University under the ADA for discrimination based on her disability, failure to provide a reasonable accommodation for her disability, and retaliation. Ehlers and the University each

moved for summary judgment. The district court granted summary judgment to the University, and Ehlers appeals, raising only the reasonable-accommodation issue.

**II.**

We review a district court's grant of summary judgment *de novo*. *Whittington v. Tyson Foods, Inc.*, 21 F.4th 997, 1000 (8th Cir. 2021). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations." § 12112(b)(5)(A).

When evaluating claims of failure to provide reasonable accommodations, we apply a modified burden-shifting analysis. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004); *Fenney v. Dakota, Minn. & E. R.R.*, 327 F.3d 707, 712 (8th Cir. 2003). The plaintiff must first make a facial showing "that he or she (1) is disabled within the meaning of the ADA, (2) is qualified . . . , and (3) has suffered an adverse employment decision because of the disability." *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1016 (8th Cir. 2000). "To be a 'qualified individual' within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Fenney*, 327 F.3d at 712 (internal quotation marks and brackets omitted); *see* § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

"[I]f the employee cannot perform the essential functions of the job without an accommodation, he must only make a facial showing that a reasonable accommodation is possible." *Id.* (internal quotation marks and emphasis omitted). And if the employee otherwise makes a facial showing, "[t]he burden of production then shifts to the employer to show that it is unable to accommodate the employee." *Id.* (brackets omitted).

If the employer meets its burden of production to "show that the employee cannot perform the essential functions of the job even with reasonable accommodation, then the employee must rebut that showing with evidence of his individual capabilities." *Id.* (brackets omitted). "At that point, the employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination." *Id.*

"[I]n certain situations, reassignment to a vacant position can be a reasonable accommodation." *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 814 (8th Cir. 2015). "Reassignment is not required of employers in every instance . . . and is an accommodation of last resort when the employee cannot be accommodated in his existing position." *Id.* (internal quotation marks omitted). For "reassignment, the employer is not required to create a new position or move other employees from their jobs in order to open up a position. Rather, reassignment to another position is a required accommodation only if there is a vacant position for which the employee is otherwise qualified." *Id.* (citation omitted). To show that reassignment is a possible accommodation, *see Fenney*, 327 F.3d at 712, the plaintiff must make a facial showing that a position is available for which he qualifies. *See Cravens*, 214 F.3d at 1020 (disagreeing with the district court's conclusion that the employee "had not facially demonstrated that reassignment . . . would have been a reasonable accommodation"); *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1114-15 (8th Cir. 1995).

Apart from making a facial showing under the modified burden-shifting framework, a plaintiff can survive summary judgment on a reasonable-

accommodation claim by showing that the employer failed to engage in an interactive process, even though failing to do so does not itself give rise to liability under the ADA. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999).

## A.

First, we address whether Ehlers has met her burden to show that the University failed to provide a reasonable accommodation. The parties do not dispute that (1) Ehlers has a disability, suffered adverse employment action, and has the requisite skill, education, experience, and training for her administrative position, *see Fenney*, 327 F.3d at 712, and that (2) Ehlers could not perform the essential functions of her OSHB position without an accommodation of reassignment. Thus, the dispute is whether Ehlers qualified for any alternative positions.

Determining whether reassignment was possible requires Ehlers to make a facial showing that she satisfied the legitimate prerequisites for an alternative position and would "be able to perform the essential functions of that position with or without reasonable accommodations." *See Cravens*, 214 F.3d at 1019; *Fenney*, 327 F.3d at 712. Ehlers contends that she has met her burden by identifying eight jobs that she claims were clerical or administrative jobs for which she qualified and about which she had requested more information. Though Ehlers did not provide the titles, postings, or descriptions of these jobs, she says that identifying the job numbers and general job types is sufficient to shift the burden to the University "to show that it is unable to accommodate the employee," *see Fenney*, 327 F.3d at 712, because she "cannot identify open positions without the assistance of the employer."

We disagree. We have previously found a genuine dispute of material fact about whether reassignment was possible when a plaintiff testified that she qualified for certain jobs, could perform the essential job functions, competently performed her job duties for close to twenty years, and provided the job postings. *Cravens*, 214 F.3d at 1020. Similarly, we have held that there was a genuine dispute of material fact about whether a plaintiff could be reassigned to a shift-manager position from a

unit-manager position when (1) the plaintiff was able to work thirty-five to forty hours per week "with no more than three consecutive days at work" and (2) there was evidence that the plaintiff "competently performed her duties as a unit manager for close to twenty years." *Fjellestad*, 188 F.3d at 947, 950-51.

Here, Ehlers did not submit the job posting, the job title, or any evidence of the duties or requirements of any position. And by the time Ehlers was fired, she had extensive work restrictions that would greatly limit her ability to perform clerical or administrative jobs. Specifically, Ehlers had asked that the University: (1) reduce the need for constant speaking, such as by providing breaks from speaking, either every other hour or for fifteen minutes of each hour; (2) provide nonspeaking work for fifteen minutes before her lunch break; (3) allow additional nonspeaking breaks as needed; (4) not reduce her lunch period because of her additional breaks; (5) provide her with a phone that can manage and record her break times; (6) provide an ergonomic evaluation of her work station and a chair to support her neck, a monitor adjustment, and a sit-to-stand work station; (7) not require her to use devices controlled by facial and eye movement; (8) allow her to minimize facial expressions; (9) provide a quiet work environment; (10) restrict lifting to no more than twenty pounds; and (11) arrange for an occupational-medicine consultation. Besides her specific work restrictions, Ehlers had notified the University that she had been diagnosed with acute neck-muscle strain, upper-back pain, bilateral hand pain, tendonitis of the elbow or forearm, head and face pain, anxiety, and PTSD. Ehlers had also told the University that she experienced "overuse injuries" from "constant typing" in the OSHB position. Given these extensive work restrictions and new diagnoses, to "make a facial showing" that she possessed the requisite skill, education, experience, and training for the position and could perform the positions' essential duties with or without a reasonable accommodation, Ehlers needed to do more than provide job numbers, testimony that the identified jobs were clerical or administrative jobs, and her unsupported testimony that she qualified for them. *See Fenney*, 327 F.3d at 712; *Cravens*, 214 F.3d at 1020; *Fjellestad*, 188 F.3d at 950-51.

B.

Next, we address whether the University failed to engage in the interactive process because it did not help Ehlers determine if she was qualified for the jobs she identified. "To establish that an employer failed to participate in an interactive process, a disabled employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Cravens*, 214 F.3d at 1021. An employer is not required to find a job for the employee that meets his restrictions—it only needs to "make a good faith effort to assist the employee in seeking accommodation." *See id.*; *Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 575 (8th Cir. 2000). We have previously found a genuine dispute of material fact about whether an employer acted in good faith when it discontinued discussing accommodations, did not investigate the employee's abilities, did not contact a manager about available positions, and waited until after the district court's ruling to offer the employee a position that would accommodate his disabilities. *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 899, 902-03 (8th Cir. 2006).

Here, only the third and fourth requirements are at issue: good-faith effort and but-for causation. We conclude that there is no genuine dispute of material fact about whether the University acted in good faith to make reasonable accommodations for Ehlers. The University offered to help Ehlers find a new job many times and considered adopting technologies to help Ehlers perform her job duties. Once the University realized Ehlers could not be accommodated in her current position, an employee from the job center reached out to Ehlers to schedule a meeting about vacant positions. But Ehlers cancelled it, and the rescheduled meeting could not take place because Ehlers went on full-time medical leave. In March 2017, Ehlers asked the University whether four jobs would be "within [her] restrictions and if there are any working conditions that would . . . cause and trigger pain." Though the University did not respond for eleven days and did not provide

additional information about the positions, the University told an employee at the job center to collect information about the positions.

When Ehlers informed the University of four more jobs she was interested in, it worked with her to develop a lengthy questionnaire, which it forwarded to the relevant hiring supervisors. One hiring supervisor returned the information, but the position's duties were inconsistent with Ehlers's work restrictions. The University also told Ehlers that if she was concerned about positions being filled before it could obtain information about the positions, she should apply for the jobs and withdraw her application if she did not qualify.

Based on these actions, no reasonable jury could find that the University did not make good-faith efforts to make reasonable accommodations for Ehlers. *Cf. Canny*, 439 F.3d at 899, 902-03; *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862-64 (8th Cir. 2006) (refusing to grant judgment as a matter of law to the employer on the good-faith issue when the jury could conclude that the employee needed accommodation only for "a marginal function that easily could have been eliminated"). The University's failure to inform Ehlers immediately whether she qualified for the jobs she identified is not evidence of bad faith. The University had to reach out to each department to obtain the information, and it is likely that determining whether a job was consistent with Ehlers's extensive work restrictions would have been difficult and time consuming.

Furthermore, even if the University did not use good-faith efforts, Ehlers needs to show that she "could have been reasonably accommodated but for the employer's lack of good faith." *Cravens*, 214 F.3d at 1021. We already determined that Ehlers has not shown that she was qualified for any jobs based on the lack of evidence about the duties and requirements of the positions and whether she could perform them in light of her extensive work restrictions. *See Faulkner v. Douglas Cnty. Neb.*, 906 F.3d 728, 734 (8th Cir. 2018) (finding no liability for failure to engage in a good-faith interactive process when the plaintiff "was not a qualified employee"). Thus, we conclude that there is no genuine dispute of material fact

about whether the University failed to engage in the interactive process and the University is entitled to judgment as a matter of law.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the University.

_____