# United States Court of Appeals

## For the Eighth Circuit

---

No. 23-2360

---

Robert Wayne Goosen

*Plaintiff - Appellant*

v.

Minnesota Department of Transportation

*Defendant - Appellee*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: December 12, 2023
Filed: June 24, 2024

---

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.

---

MELLOY, Circuit Judge.

In 2018, Robert Wayne Goosen sustained an on-the-job injury while employed by the Minnesota Department of Transportation ("MNDOT"). The injury caused Goosen to miss months of work as he underwent multiple surgeries and physical therapy. In 2021, after Goosen had taken a leave of absence to recover from his fourth injury-related surgery, Goosen's doctor determined that he had reached his maximum medical improvement but could return to work subject to certain physical restrictions. The MNDOT, however, determined that because of these

restrictions, Goosen could not perform the essential functions of his job and the agency could not reasonably accommodate him. Thereafter, Goosen brought the current action, alleging that MNDOT violated the Americans with Disabilities Act ("ADA") by failing to provide a reasonable accommodation. MNDOT moved for summary judgment, which the district court[1] granted. We affirm.

I.

Pursuant to our standard of review, we present the facts in the light most favorable to Goosen, with all reasonable inferences drawn in his favor. *Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 651 (8th Cir. 2023).

MNDOT hired Goosen to work as a heavy equipment mechanic in 2008 and promoted him to heavy equipment field mechanic in 2011. As a heavy equipment field mechanic, Goosen repaired vehicles as well as equipment used for construction, road maintenance, and snow and ice control. Goosen was also required to work off-site, which generally meant he would travel to remote locations to conduct maintenance and repairs on equipment.

In late June 2018, Goosen was repairing machinery when he suffered a serious injury to his left arm, hand, and ulnar nerve. Goosen required medical treatment and had to miss more than a month of work. In early August, Goosen returned to work, but because he was still recovering from his injury, he was placed in a light-duty mechanic position. Between September 2018 and May 2020, Goosen underwent four surgeries, and in October 2020, he went on a one-year medical leave of absence related to his injury. During that time, Goosen engaged in a physical therapy program, which he completed in March 2021.

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

On April 1, 2021, Goosen's treating doctor approved his return to work for eight to ten hours per day, five days per week, under certain temporary restrictions. Goosen's restrictions included refraining from: outstretching his arms for more than three hours per day; reaching overhead for more than six hours per day; and climbing in and out of trucks and equipment for more than seven hours per day. Goosen's doctor also advised that he should be permitted to take stretch breaks as needed and work at his own pace.

On April 9, 2021, without seeing Goosen again, the treating doctor revised his medical assessment. The doctor determined that Goosen had reached his "maximum medical improvement" and that his work restrictions were not temporary but rather indefinite. The doctor also removed the eight-to-ten-hour work restrictions and advised that Goosen could work more than ten hours each day, five days per week. After receiving the doctor's revised assessment, Goosen sought an opinion from a second doctor who agreed that he had reached maximum medical improvement and that the restrictions were appropriate.

In response to the doctor's assessment and Goosen's request to return to work, the MNDOT organized a "Work Analysis Team" to determine whether they could reasonably accommodate Goosen's restrictions. The Work Analysis Team was comprised of fourteen members, including multiple senior managers from human resources, an ADA coordinator, a member of the office of equity and diversity, representatives from the safety and worker's compensation program, two of Goosen's supervisors who were former mechanics, a labor representative, and Goosen's vocational rehabilitation counselor. The Work Analysis Team met nine times between April 6 and May 6, 2021, and worked to identify the essential functions and physical requirements of the heavy equipment field mechanic position, as well as what accommodations, if any, MNDOT could reasonably provide.

To determine whether the MNDOT could accommodate Goosen's restrictions, the Work Analysis Team compiled a spreadsheet listing essential functions of the heavy equipment field mechanic position. The Work Analysis Team

determined that repair and maintenance were essential functions of the job. The Team then itemized the tasks required to perform each essential function. For each task that implicated one of Goosen's permanent restrictions, the Work Analysis Team assessed the accommodation options. Ultimately, the Work Analysis Team determined that Goosen could not perform the essential functions of the job with or without reasonable accommodation.

The Work Analysis Team compiled its findings in a report that it then provided to Goosen. Thereafter, the Work Analysis Team met with Goosen on April 28 so he could provide feedback on the report and ideas for accommodations. In the meeting, Goosen did not contest any of the report's findings, and he told the Work Analysis Team that he thought stretch breaks would be a sufficient accommodation. At the conclusion of the meeting, the Team decided to recess to consider and identify other accommodations, including whether Goosen could be reassigned to a heavy equipment mechanic position rather than a heavy equipment field mechanic position. A week later, the Work Analysis Team and Goosen met again. The Team determined there were no viable accommodations, including reassignment to the heavy equipment mechanic position. On October 12, 2021, Goosen's FMLA leave ended, and MNDOT considered him to have voluntarily resigned from his position.

Thereafter, Goosen brought this action alleging that MNDOT had violated the ADA by discriminating against him on the basis of his disability. Goosen argued that he could have performed the essential functions of the heavy equipment field mechanic position and that the agency could have reasonably accommodated his disability by placing him in a heavy equipment mechanic position. After the close of discovery, MNDOT moved for summary judgment, which the district court granted on grounds that "no reasonable jury could find either that Goosen was qualified to perform the essential functions of his former position or that a reasonable accommodation was possible." Goosen appeals.

II.

Goosen first challenges the district court's refusal to consider three affidavits signed by Clifford Theis, Scott Wistrom, and Dale Sauer, all MNDOT heavy equipment mechanics or field mechanics. "We review a district court's evidentiary rulings for an abuse of discretion." *Gareis v. 3M Co.*, 9 F.4th 812, 816 (8th Cir. 2021). "We afford the district court broad discretion in its evidentiary rulings, in deference to its familiarity with the details of the case and its greater experience in evidentiary matters." *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 408 (8th Cir. 2023) (citation omitted).

Goosen does not dispute that disclosure of his three affidavits was untimely. Where a party fails to disclose in a timely manner, "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018); Fed. R. Civ. P. 37(c)(1). The Federal Rules of Civil Procedure provide exceptions to the default sanction if the failure was "substantially justified or is harmless," or on motion by the party who failed to disclose. Fed. R. Civ. P. 37(c)(1); *Vanderberg*, 906 F.3d at 705.

Goosen did not move for a lesser sanction but argues that his untimely disclosure was "substantially justified" and "harmless." Goosen asserts that the late disclosure was justified because he "did not become aware of mechanics Theis and Wistrom until just before the close of discovery." For Sauer, Goosen argues that admission of the affidavit would have been harmless because he identified Sauer while being deposed. Goosen argues that the untimely disclosure was also harmless on grounds that "MNDOT knew its own mechanics" and therefore could not "claim unfair surprise."

We disagree and conclude that the district court did not abuse its discretion in refusing to consider the affidavits. In making its reasoned decision, the district court observed that Goosen had previously received an extension of the discovery timeline

and yet still failed to disclose the witnesses. Goosen did not name the three mechanics in either his disclosures or his answers to interrogatories. Moreover, Goosen did not mention Theis or Wistrom in his testimony, and when he mentioned Sauer, it was unrelated to the issues raised in the affidavit. The district court concluded there was no apparent reason why Goosen failed to identify the witnesses earlier, especially since their testimonies were so essential to his argument. Finally, the district court determined that if it were to admit the affidavits, MNDOT could be prejudiced by the untimely disclosure because there had been no opportunity to depose the witnesses prior to the close of discovery. The district court did not abuse its discretion in excluding the affidavits.

III.

Goosen next argues that the district court erred in granting summary judgment to MNDOT on his ADA failure to accommodate claim.[2] We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Goosen as the nonmoving party. *Scruggs v. Pulaski Cnty.*, 817 F.3d 1087, 1092 (8th Cir. 2016). A district court's grant of summary judgment is proper when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the ADA, employers like MNDOT discriminate on the basis of disability when they fail to provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of

_____

[2]Goosen also argues that he brought a separate "disability discrimination" claim and that the district court erred in dismissing it. This contradicts both Goosen's complaint and his opening brief, where he states that "[t]he only dispute as to the disability discrimination claim is whether he is qualified to perform the essential functions of the job with or without accommodation." Accordingly, we do not address this argument.

disability discrimination, Goosen "must show that he (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003) (quoting *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)).

The parties dispute whether Goosen is a qualified individual under the ADA. "To be considered a qualified individual under the ADA, an employee must '(1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" *Scruggs*, 817 F.3d at 1092 (alteration in original) (quoting *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013)). The parties agree that Goosen possessed the requisite skill and expertise for the position but dispute whether Goosen could perform the essential functions of the job with or without reasonable accommodation.

## A.

In arguing that he is qualified for the heavy equipment field mechanic position, Goosen contends that MNDOT erred in defining the job's essential functions. "Essential functions," as distinguished from "marginal functions," are "the fundamental job duties of the employment position the individual with a disability holds or desires" and vary according to the job. *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 810 (8th Cir. 2015) (quoting 29 C.F.R. § 1630.2(n)(1)). "A job function may be essential if the reason the position exists is to perform that function, or if a limited number of employees are available among whom the performance of the job function can be distributed." *Scruggs*, 817 F.3d at 1092 (quoting *Hill*, 737 F.3d at 1217). On the other hand, "a task may be an essential function even if the employee performs it for only a few minutes each week, and even if other employees are available to perform the task for the disabled employee." *Minnihan*, 779 F.3d at 812. A task can also be an essential function where there is only a possibility that the disabled employee will be required to complete it.

*Dropinski v. Douglas Cnty.*, 298 F.3d 704, 708–09 (8th Cir. 2002). To determine whether job duties are essential, we consider the following factors:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 914 (8th Cir. 2013) (quoting *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004)). The employer's judgment as to what constitutes an essential function is a "highly probative" factor. *Scruggs*, 817 F.3d at 1093 (quoting *Kammueller*, 383 F.3d at 786).

The Work Analysis Team determined that repair and maintenance of heavy equipment were essential functions of the heavy equipment field mechanic position. The Team then defined the tasks required to perform the essential functions, basing its conclusions on the preemployment job description, the experience and insight of Goosen's supervisors, the amount of time mechanics spent accomplishing their various job responsibilities, and the consequences of Goosen's inability to perform the essential functions of his position. The position description stated that "[w]hile performing the duties of [the] job," a heavy equipment field mechanic "frequently uses gross and fine dexterity in a variety of positions including reaching outward and overhead . . . ." Based on their collective insight, members of the Work Analysis Team defined "frequently" as occurring more than two hours and forty minutes and less than five hours and twenty minutes per day—which for certain tasks, exceeded Goosen's restrictions. To determine the frequencies of certain tasks, the Work Analysis Team also relied on calculations provided by Goosen to determine how much time heavy equipment field mechanics engaged in each task. Goosen's supervisors, who had worked as heavy equipment field mechanics, also provided insight into the essential functions of the job and the tasks required to complete each function. Based on its assessment of the tasks required to complete the heavy

equipment field mechanic's essential functions, the Work Analysis Team determined that Goosen was not qualified to perform the job responsibilities.

Goosen does not argue that he can perform the essential functions of the heavy equipment field mechanic as the Work Analysis Team defined them; rather, he disputes the Work Analysis Team's determinations of the required frequency and duration of three tasks required to repair and maintain heavy equipment. Goosen specifically argues that the durations of the following tasks are not required to fulfill the heavy equipment field mechanic's essential functions: (1) holding arms outstretched for more than three hours per shift; (2) holding arms overhead for more than six hours per shift; and (3) climbing in and out of heavy equipment for more than seven hours per shift. To support his position, Goosen first points to the fact that these physical requirements were not stated in the heavy equipment field mechanic job description. In this regard, the job description states that heavy equipment field mechanics are "frequently" required to engage in holding arms outstretched or overhead. The Work Analysis Team defined "frequently" based on the knowledge and experience of two mechanics and on calculations provided by Goosen. Goosen counters that the job description refers to "a variety of positions," which he argues is evidence that holding arms outstretched or overhead at the frequencies outlined by the Work Analysis Team are not part of the essential functions of the job. This does not negate the fact that a heavy equipment field mechanic may be required to hold their arms in ways in which Goosen is restricted. Indeed, "that the potential for these functions exist[s]" supports finding that the tasks are part of the job's essential functions. *Dropinski*, 298 F.3d at 708.

Goosen next argues that during the preemployment testing for heavy equipment field mechanics, MNDOT did not require applicants to hold their arms outstretched and overhead or climb in and out of equipment for the durations of time determined by the Work Analysis Team. But as we have explained before, preemployment testing is not dispositive when determining a job's essential functions. *Id.* at 708–09. Finally, Goosen argues that he had never personally been required to engage in such extensive or frequent activities during his eleven years as

a mechanic. We have held that a plaintiff's subjective experience has little weight in our analysis of a job's essential functions. *Id.* at 709. Accordingly, we agree with the district court that the Work Analysis Team "accurately and reasonably" defined the essential functions of a heavy equipment field mechanic. Thus, we affirm the district court's conclusion that, as a result of his restrictions, Goosen could not perform the essential functions of a heavy equipment field mechanic.

B.

Goosen next argues that, as a reasonable accommodation, MNDOT should have reassigned him to a heavy equipment mechanic position. We have held that where an "employee cannot perform the essential functions of the job without an accommodation, he must only make a 'facial showing that a reasonable accommodation is possible.'" *Fenney*, 327 F.3d at 712 (emphases omitted) (quoting *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995)). "The burden of production [then] shifts to the employer to show that it is unable to accommodate the employee." *Id.* (alteration original). "If the employer can show that the employee cannot perform the essential functions of the job even with reasonable accommodation, [then] the employee must rebut that showing with evidence of his individual capabilities." *Id.* (alteration original).

We need only address the first step in the reasonable accommodation analysis because Goosen fails to make a facial showing that the heavy equipment mechanic position was a reasonable accommodation. "We have found that in certain situations, reassignment to a vacant position can be a reasonable accommodation, where the employee can perform the essential functions of the new position." *Minnihan*, 779 F.3d at 814. "Reassignment is not required of employers in every instance, however, and is 'an accommodation of last resort' when the employee cannot be accommodated in his existing position." *Id.* (quoting *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1019 (8th Cir. 2000)). "[R]eassignment to another position is a required accommodation only if there is a vacant position for which the employee is otherwise qualified." *Id.* (citation omitted).

"Determining whether reassignment [is] possible requires [a plaintiff] to make a facial showing that she satisfied the legitimate prerequisites for an alternative position and would 'be able to perform the essential functions of that position with or without reasonable accommodations.'" *Ehlers v. Univ. of Minn.*, 34 F.4th 655, 660 (8th Cir. 2022) (quoting *Cravens*, 214 F.3d at 1019); *see also Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 954 (8th Cir. 1999) ("The employee . . . carries the burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the essential functions of the job."). We have held that where a plaintiff failed to "submit the job posting, the job title, or any evidence of the duties or requirements of any position," they did not meet their evidentiary burden of making a facial showing. *Ehlers*, 34 F.4th at 661. Further, we have found that where a plaintiff only submitted job identification numbers for open positions, testimony that those jobs fell into the same category of work, and "unsupported testimony that [a plaintiff] qualified for them," the plaintiff failed to make a facial showing. *Id.*

Here, Goosen has not provided sufficient evidence to support a facial showing that the heavy equipment mechanic position was a reasonable accommodation. Goosen provides no job posting or job description to show that the essential functions were different than those of the heavy equipment field mechanic, and he provides no testimony to support this position. In contrast, MNDOT presents testimony that the main difference between the heavy equipment field mechanic position and the heavy equipment mechanic position is that the former is required to work off-site. The only evidence Goosen provides to support his argument that MNDOT could have accommodated his disability is that, during the April 28 meeting, the Work Analysis Team expressed "a pretty high level of confidence" that the heavy equipment mechanic position could be a reasonable accommodation. Yet the Work Analysis Team clarified that they were not making an offer and expressed that they still had concerns about whether MNDOT could reasonably accommodate Goosen in the heavy equipment mechanic position.

Ultimately, MNDOT determined that the heavy equipment mechanic position was not a reasonable accommodation. One of Goosen's supervisors who was on the Work Analysis Team, Thomas Bowe, testified that putting Goosen in a heavy equipment mechanic position was not a reasonable accommodation because his restrictions would limit his ability to do the work—he would need to keep his arms outstretched for more than three hours or reach overhead for more than six hours. Bowe further testified that because of Goosen's restrictions, if MNDOT placed Goosen in a heavy equipment mechanic position, they would have to hire another employee. The Work Analysis Team also determined that when Goosen met the limit of his restrictions, other employees would have to step in and assume his work. We have held that in providing a reasonable accommodation, employers are "not required to reallocate the essential functions of a job." *Dropinski*, 298 F.3d at 707 (citation omitted). Similarly, an employer is not expected to provide "an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities," and generally, hiring a new employee is not a reasonable accommodation. *Minnihan*, 779 F.3d at 813–14 (citation omitted). Although Goosen provides evidence that, at the April 28 meeting, MNDOT seriously considered the heavy equipment mechanic position as an accommodation, consideration of an accommodation, alone, is not dispositive of the existence of a reasonable accommodation. *See Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 932 (2012) (holding that "statements of [defendant's] employees show that the company considered the possibility of" a reasonable accommodation but not a conclusive determination that such an accommodation was possible); *see also Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007) (discussing public policy reasons for not discouraging employers from exploring options to accommodate disabled employees). Therefore, without more, Goosen has not satisfied his burden of making a facial showing that a reasonable accommodation was available.[3]

---

[3]The parties also dispute whether a vacant heavy equipment mechanic position was even available, and alternatively, whether Goosen's collective bargaining agreement would have allowed him to use his seniority to assume a heavy equipment mechanic position. Because Goosen failed to produce evidence that the heavy

-12-

Accordingly, we affirm the district court's grant of summary judgment to MNDOT.

_____

---

equipment mechanic position was a reasonable accommodation, we need not address these issues.