# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1837
_____

Christine Klimek

*Plaintiff - Appellant*

v.

CentraCare Health System

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 18, 2026
Filed: June 15, 2026

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Christine Klimek sued CentraCare Health System ("CentraCare") for failure to accommodate her disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Minnesota Human Rights Act, Minn. Stat. § 363A.08. Klimek appeals the district court's grant of summary judgment in CentraCare's favor and the dismissal of her complaint. Because there are unresolved issues of material fact, we reverse and remand for further proceedings.

## I. BACKGROUND

Christine Klimek is a registered nurse who worked for CentraCare between 2008 and 2021.  In 2010, she suffered a workplace-related injury and subsequently developed Complex Regional Pain Syndrome, which is also known as Reflex Sympathetic Dystrophy ("RSD").  According to Klimek, her RSD causes vertigo, nausea, dry heaves, chronic pain throughout her body, and a disproportionate pain response to minor injuries.  It also affects her cognitive abilities, mood, sleep, and appetite.

In 2016, CentraCare instituted a policy requiring all employees to get the measles, mumps, and rubella ("MMR") vaccine.  Klimek applied for a medical exemption, accompanied by a letter from her doctor supporting her request.  The letter stated that "a painful stimulus like a vaccine can flare up" Klimek's RSD, and given Klimek's condition, "the risks of a vaccine seem to outweigh the benefits."  Based on this information, CentraCare concluded Klimek met "the criteria for a permanent medical exemption," and should not have "live vaccinations" while being treated for RSD.

In 2021, Klimek accepted a position as a clinical documentation integrity specialist, which involved coding diagnoses and preparing medical records.  She performed this work remotely from home 100% of the time.  That same year, CentraCare implemented a new policy requiring the COVID-19 vaccination for every employee unless the employee obtained a medical or religious exemption.  Klimek applied for a medical exemption, stating she was currently "medically exempt from any/all live or attenuated vaccinations related to a CentraCare work-related injury resulting in a documented permanent disability and a rare condition, Chronic Regional Pain Syndrome/Reflex Sympathetic Dystrophy."  She added, "This exemption has been documented and filed in my chart since August 2016.  My condition is lifelong and I manage the negative effects on a daily basis."  Klimek's provider also completed a portion of the form, stating: "Patient has RSD as well as documentation that explains her reaction to all vaccines.  It is not recommended that

-2-

she get any vaccines due to her RSD." Klimek also attached a separate letter from her medical provider.

On October 12, 2021, CentraCare denied Klimek's exemption request without explanation, and advised her that she would be placed on unpaid administrative leave unless she received the vaccine. On October 26, 2021, CentraCare sent a letter to Klimek, which set October 29, 2021, as the deadline for providing "relevant medical information" for employees who had their exemption request denied. Klimek responded to the invitation to supplement with a more detailed letter requesting reconsideration. She explained that she had been working 100% of the time from her home since May 2021 and was "not in the presence of other coworkers or patients," and "all of [her] work requirements [could] be accommodated via WebEx from home if needed." Klimek concluded by noting, "Although I am unable and unwilling to receive the COVID-19 or any vaccination, I still have the ability to serve our patients and our community while working from home." On November 16, 2021, CentraCare again denied Klimeck's exemption request without explanation. CentraCare informed Klimek that if she was not vaccinated on or before December 15, 2021, she would be placed on unpaid leave.

On December 3, 2021, Klimek and CentraCare's incident commander for the COVID-19 response, Dr. George Morris, met by teleconference to discuss the denial of Klimek's accommodation request. During the conference, Dr. Morris offered to speak with Klimek's physicians to explain to them why he believed the vaccine was safe but stated the vaccine "would be a requirement . . . for on-going employment with CentraCare." Klimek reiterated her status as a 100% remote worker, but Dr. Morris informed her that where she worked was not "a part of the equation." On December 16, 2021, CentraCare placed Klimek on an involuntary unpaid leave of absence because she was unvaccinated, which effectively ended her employment.

Having exhausted her administrative remedies and having received a right to sue letter from the Equal Employment Opportunity Commission, Klimek commenced this action against CentraCare for failing to accommodate her disability.

After some discovery, the parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of CentraCare, finding CentraCare's COVID-19 policy was an essential job function and Klimek's request for an accommodation, a medical exemption, was unrelated to her disability. The court further found that CentraCare made a good faith effort to assist Klimek in seeking an accommodation. Klimek appeals.

## II.    DISCUSSION

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party and affirming only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Huber v. Westar Foods, Inc., 139 F.4th 615, 620 (8th Cir. 2025) (en banc). "Summary judgment is appropriate when . . . no reasonable jury could find in favor of the nonmoving party." Hennessey v. Good Earth Tools, Inc., 126 F.3d 1107, 1108 (8th Cir. 1997).

We review Klimek's ADA and MHRA claims simultaneously because they are analyzed under the same standard. Brunckhorst v. City of Oak Park Heights, 914 F.3d 1177, 1182 (8th Cir. 2019). When a failure to accommodate claim is based on circumstantial evidence, we analyze the claim using the familiar McDonnell Douglas burden-shifting framework. See Higgins v. Union Pac. R.R. Co., 931 F.3d 664, 669 (8th Cir. 2019) (applying the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). To establish a prima facie case, a plaintiff must establish discrimination based on disability and a failure to accommodate the disability. Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 905 (8th Cir. 2015).

### 1.    Discrimination Based on Disability

To establish a prima facie case of discrimination based on disability, Klimek must show that she "(1) is disabled within the meaning of the ADA; (2) is a qualified

-4-

individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 923 (8th Cir. 2018). Klimek asserts there is no genuine issue of material fact as to whether she is disabled while CentraCare contends Klimek was not a qualified individual and did not suffer an adverse employment decision because of her RSD.

The definition of "disability" under the ADA is expansive and covers any "physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). The district court determined that a genuine issue of material fact exists as to whether Klimek's condition qualifies as a disability under the ADA. CentraCare does not dispute the district court's finding, acknowledging resolution depends on credibility determinations. At this stage in the proceedings, we, like the district court, cannot make credibility determinations and must view the evidence in the light most favorable to Klimek. Even "thin" evidence that creates a disputed issue of material fact is sufficient. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 716 (8th Cir. 2003) (explaining evidence that creates a reasonable inference from which an issue of material fact can be drawn on whether a plaintiff has a disability within the meaning of the ADA is sufficient to satisfy a plaintiff's initial prima facie burden).

We next turn to the second prong and CentraCare's claim that Klimek was not qualified. While a plaintiff bears the ultimate burden of proving she is qualified, an employer who disputes a plaintiff's claim that she can perform the essential job functions must put forth evidence establishing those functions. EEOC v. Wal-Mart Stores, Inc., 477 F.3d 561, 568 (8th Cir. 2007). CentraCare asserts that "[e]ssential job functions can include compliance with policies the employer deems essential." From this theory it argues that compliance with its COVID-19 policy was essential because the policy stated that "[a]s a condition of employment, all employees" were required to comply and failure would result in a leave of absence. Adding the label of "policy" to a task does not render it an essential job function, and a duty does not become essential by the employer's *ipse dixit.*

Instead, when deciding whether a duty is an essential job function, an employer's judgment, while probative, is "merely evidence and is not conclusive." Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 786 (8th Cir. 2004); see also Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1258 (11th Cir. 2007) ("Indeed, if it were considered to be conclusive, then an employer that did not wish to be inconvenienced by making a reasonable accommodation could, simply by asserting that the function is 'essential,' avoid the clear congressional mandate that employers make reasonable accommodations." (cleaned up)); Rorrer v. City of Stow, 743 F.3d 1025, 1043 (6th Cir. 2014) (same). Examining the substance of CentraCare's policy in conjunction with its argument, CentraCare contends that vaccination itself was not an essential job function—rather, the vaccination or receiving an exemption is the essential job function.

CentraCare does not explain how an accommodation—in the form of a medical exemption from a vaccine requirement—can be an essential job function. The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Based on this definition, an "accommodation" cannot also be an "essential function." To hold otherwise would conflate the two concepts contrary to the plain text of the ADA. Exemptions from vaccination requirements are a type of accommodation and are not an essential job function. See Bowlin v. Bd. of Dirs., 167 F.4th 469, 477-78 (7th Cir. 2026) (characterizing the plaintiffs' requested accommodation as exemptions from both the testing and vaccination requirements).

While CentraCare contends its policy is justified based on its goal of protecting the community at large, its social policy and humanitarian endeavors cannot form a basis to avoid ADA liability. A qualified individual is one "who can perform the essential functions of the *employment* position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8) (emphasis added). An unvaccinated employee spending her free time active in the

community performing regular life tasks, like buying groceries or taking a walk, is performing a task entirely unrelated to her employment.

We are also unpersuaded by CentraCare's argument that we should find CentraCare's vaccine policy an essential function under the facts of this case because other courts have found compliance with a COVID-19 vaccine policy is a legitimate condition of employment in a healthcare environment. "[T]the essential function requirement focuses on the desired result . . . rather than the means of accomplishing it." EEOC v. Drivers Mgmt., LLC, 142 F.4th 1122, 1137 (8th Cir. 2025). Vaccination is not the desired result. It is a means to an end—creating a safer workplace environment for both patients and coworkers.

Because vaccine exemption is not an essential job function and vaccination is a means to an end, the issue becomes whether in-person patient care was one of Klimek's essential job functions. To be essential, it must be a fundamental duty of the employment position which varies according to the job. Goosen v. Minn. Dep't of Transp., 105 F.4th 1034, 1040 (8th Cir. 2024). Evidence to consider includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; and (5) the current work experience of employees in similar jobs. Higgins, 931 F.3d at 670.

Viewing Klimek's evidence in a light most favorable to her, she showed that her position involved no physical patient care and that she was working entirely from home electronically preparing records. In response, CentraCare asserts that in-person patient care might have been required of Klimek, noting that it called some remote employees back to work on the floor during the COVID-19 pandemic and that it could have done the same to her. CentraCare adds, "The fact a function (here, in-person work) was rarely performed, or that there was only 'the potential' that the function be performed in certain circumstances, does not make the function non-essential or optional." But CentraCare's assertions are belied by the record when

viewed in a light most favorable to the non-moving party. While our precedent acknowledges that a "task can . . . be an essential function where there is only a possibility that the disabled employee will be required to complete it," Goosen, 105 F.4th at 1040, Klimek's job description does not indicate that in-person work was contemplated. It states that Klimek was required to use her computer for "7-8 hrs/day" and the position's "Core Functions" included duties such as identifying documentation issues and collecting data—nothing in the job description relates to physical care of patients. CentraCare has also failed to adequately show any negative consequences of not requiring Klimek to perform in-person patient care. When this is considered alongside the evidence that Klimek spent no time performing in-person work, the evidence weighs against a finding patient care was an essential job function. Under these circumstances, Klimek presented sufficient evidence to show she was a qualified individual.

Finally, CentraCare argues that Klimek failed to show an adverse employment action because "an employer's decision based on vaccination status does not establish the employer took action based on disability." It is undisputed that CentraCare placed Klimek on an involuntary unpaid leave of absence because she did not get the COVID-19 vaccine. Klimek asserted, and provided information to her employer indicating, that she had a disability preventing her from receiving the vaccine without endangering her health. Under these circumstances, Klimek has shown at minimum that there is a genuine issue of material fact that her placement on unpaid administrative leave was causally connected to her alleged disability.

2.    Failure to Accommodate

To survive summary judgment, Klimek also must establish her employer failed to accommodate her disability. Schaffhauser, 794 F.3d at 906. "To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 902 (8th Cir. 2009) (citation omitted). Klimek bears the burden of showing: (1)

CentraCare knew about her disability; (2) Klimek requested an accommodation or assistance for her disability; (3) CentraCare did not make a good faith effort to assist Klimek in seeking an accommodation; and (4) Klimek could have been reasonably accommodated but for CentraCare's lack of good faith. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 952 (8th Cir. 1999). CentraCare contends that Klimek has not satisfied the third and fourth elements.

As a threshold matter, CentraCare contends Klimek's medical evidence was insufficient to place CentraCare on notice and trigger the interactive process. We find CentraCare's contention unavailing. To trigger the interactive process, the employee must provide the employer with enough information so that the employer knows of the disability and the request for an accommodation. Kowitz v. Trinity Health, 839 F.3d 742, 748 (8th Cir. 2016). CentraCare knew about Klimek's impairment because she developed RSD after suffering a workplace injury. CentraCare received all Klimek's medical records from the date of the injury until approximately 2014. CentraCare's workers' compensation insurance covered Klimek's recovery and surgery costs. After her progress plateaued in 2013 or 2014, Klimek was living at her new "baseline." In 2016, Klimek submitted a letter from her physician regarding the MMR vaccine. The doctor stated, "[A] painful stimulus like a vaccine can flare up her RSD," and he advised that Klimek "refrain from accepting the MMR vaccination to avoid possible complications." In response, CentraCare determined that Klimek met "the criteria for a permanent medical exemption."[1] Every year after that, CentraCare contacted Klimek during the influenza season regarding her medical exemption and reminded her to complete a flu educational module and wear a mask.

CentraCare's COVID-19 policy required employees seeking an exemption to provide two pieces of information: a form filled out by the employee and provider, and a "medical statement" from the employee's provider. A September 17, 2021,

[1]The parties' debate whether Klimek's 2016 exemption was limited to "live" vaccines. Regardless of the scope of this exemption, CentraCare gained knowledge about Klimek's impairment by these communications.

email from a CentraCare employee to Klimek confirmed that CentraCare required completion of only the form and a medical statement. Klimek submitted these two documents, explained that she had a permanent medical exemption, and referred to her previous medical documentation in her employee file. Notably, CentraCare's letter on October 12, 2021, did not contain a request for further documentation or give any reason why Klimek was denied a medical exemption.

A couple weeks later, CentraCare sent a letter to Klimek indicating that all employees who were denied a medical exemption had the option to submit additional "relevant medical information" for review. The letter also mentioned that "some" employees did not provide "relevant medical records/physician statements," but it did not indicate that Klimek was one of them. Klimek responded by detailing her condition, limitations, and permanent medical exemption. CentraCare once again denied her request without explanation.

It is the employee's burden to show the limitations of her disability. Here, CentraCare was aware of Klimek's medical history based on prior and ongoing communications about her condition, which prevented Klimek from receiving even a flu vaccination. CentraCare previously granted Klimek a permanent medical exemption for at least some vaccines, had knowledge of Klimek's workplace injury, and had received Klimek's providers' assessments. If CentraCare needed more information beyond this, it should have requested it. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 315 (3d Cir. 1999) ("Once the employer knows of the disability and the employee's desire for accommodations, it makes sense to place the burden on the employer to request additional information that the employer believes it needs."); EEOC v. Wal-Mart Stores E., L.P., 113 F.4th 777, 788 (7th Cir. 2024) ("If [the employer] needed information from [the employee's] physician supporting the requested accommodation, it was obligated to ask for it. Indeed, that is what its own accommodation policy . . . stated."). Based on these facts, a reasonable jury could conclude that Klimek made her employer aware "of both the disability and desire for an accommodation." Kowitz, 839 F.3d at 748.

"Once the employer is made aware of the legitimate need for an accommodation, the employer must 'make a reasonable effort to determine the appropriate accommodation.'" EEOC v. Convergys Customer Mgmt. Grp., Inc., 491 F.3d 790, 795 (8th Cir. 2007) (quoting Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 727 (8th Cir. 1999)). "This means that the employer should first analyze the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations." Id.

Klimek requested a medical exemption from the COVID-19 vaccine and requested in her second letter to CentraCare that she continue working from home.[2] She clarified that she was "no longer working frontline" at the hospital, had been working from home since May 2021, and did not work in the presence of other coworkers or patients. She explained that her "work requirements can be accommodated via WebEx from home." In a videoconference with Dr. Morris, Klimek stated, "I would like in writing from CentraCare the explanation and reasons why you are unable to accommodate me working from home in the capacity that I've continued to work the last six months." Despite these requests and an employer's duty to analyze an employee's relevant job duties, CentraCare admitted that it did not consider Klimek's work-from-home status or the type of work she performed. This evidence calls into question whether CentraCare made a reasonable effort to determine whether an appropriate accommodation for Klimek's disability could be found.

CentraCare also believes that Klimek's claim fails as a matter of law because she refused to participate in the interactive process, pointing specifically at Klimek's refusal to allow Dr. Morris to speak with her care team. CentraCare again ignores other evidence in the record. More specifically, Klimek spoke with Dr. Morris after

[2]To the extent that CentraCare takes issue with the timing of Klimek's request to continue to work from home, the "delay is not dispositive of whether she made the request, and it is for a jury to decide how to reconcile that fact with the rest of the evidence." Kowitz, 839 F.3d at 748.

CentraCare denied her exemption request. During the meeting, Dr. Morris said that he was willing to speak with Klimek's providers to convince them to see things differently and understand his perspective as another medical professional. As Dr. Morris described the process, he said the discussion could "kind of extend this deadline for a month," but then at that point the vaccine "would be a requirement . . . for on-going employment with CentraCare." After Klimek questioned whether he was choosing not to accommodate her, Dr. Morris said, "[T]he choice is yours. . . . you get to choose whether you continue to work for us or not." Klimek responded, "No, actually, I would keep working 'cause I work from home 100% remote."

When an employer's "directive eliminate[s] the possibility of an accommodation," it is no longer participating in good faith to assist an employee in trying to identify a suitable accommodation. See Sanders v. Union Pac. R.R. Co., 108 F.4th 1055, 1063 (8th Cir. 2024). A fact finder could look at the evidence and find it sufficient to draw a reasonable inference that CentraCare's conduct cut off the interactive process. Given that CentraCare twice denied Klimek's exemption request without explanation, a jury could find that Dr. Morris's offer to speak with Klimek's providers was not an attempt to find clarity or a search for a suitable accommodation because CentraCare had made up its mind—leaving Klimek with only two options: vaccination or termination.

CentraCare's final argument is that Klimek failed to show any reasonable accommodation existed, even if CentraCare lacked good faith. But Klimek was already working from home unvaccinated and had been doing so for months. She did not work with patients or in the presence of coworkers, and her requested accommodation was to merely continue working in the exact same capacity. Klimek has made a sufficient showing that a reasonable accommodation to CentraCare's COVID-19 vaccine policy was possible.

To the extent that CentraCare argues that a request to work from home was not a reasonable accommodation for an employee, like Klimek, who requested to be medically exempt from a vaccination policy, this is contrary to CentraCare's own

standards and representations to its employees. CentraCare's internal COVID-19 documents stated, "If a Religious Exemption or a Medical Exemption is granted, it will be subject to safety requirements such as full personal protective equipment, education, weekly testing, or working from home, depending on the nature of that person's position." Evidence in the record indicates an available reasonable accommodation for an unvaccinated employee could be to work from home.

Once a plaintiff makes a facial showing, the burden shifts to the employer to prove that it was unable to accommodate the employee. Fjellestad, 188 F.3d at 951. To meet its burden, the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002); see also Drivers Mgmt., LLC, 142 F.4th at 1132 (same). CentraCare contends that it moved some staff members to in-person work to help during the pandemic and hypothesizes that it could have done the same with Klimek. But an undue hardship cannot be proved by hypothetical facts, and "must be sufficiently real rather than speculative.'" Naylor v. City of Muscatine, 151 F.4th 973, 976 (8th Cir. 2025) (cleaned up). CentraCare did not meet its burden of showing that it would have been an undue hardship to permit Klimek to continue working at home, as she had been doing.

## III.   CONCLUSION

Because Klimek presented sufficient evidence to create genuine issues of material fact, summary judgment was inappropriate. We reverse the district court's grant of summary judgment in CentraCare's favor and remand for further proceedings consistent with this opinion.

_____